1  Charles M. Tebbutt (OSB #96579)
   Andrea Rodgers (OSB #04102)
2  Western Environmental Law Center
   1216 Lincoln Street
3  Eugene, OR 97401
   Tel: (541) 485-2471
4  Fax: (541) 485-2457

5  Counsel for Plaintiff

6  Corrie Yackulic (WSBA #16063)
   Schroeter, Goldmark & Bender
7  810 Third Avenue, 5th Floor
   Seattle, WA 98104
8  Tel: (206) 622-8000
   Fax: (206) 682-2305

9
   Local Counsel for Plaintiff
10

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JUN 07 2004

JAMES R. LARSEN, CLERK
_____ DEPUTY
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT
11       EASTERN DISTRICT OF WASHINGTON

12  COMMUNITY ASSOCIATION FOR )   Civil No. **CV-04-3060-LRS**
    THE RESTORATION OF THE       )
13  ENVIRONMENT, a Washington    )
    nonprofit corporation,       )
14                               )
            Plaintiff,           )   COMPLAINT
15                               )
        v.                       )
16                               )
    SMITH BROTHERS FARMS, Inc.   )
17  and SMITH BROTHERS DAIRY,    )
                                 )
18  _____Defendants._____ )

19                  **INTRODUCTION**

20      1.     This is a civil action brought under the citizen suit provisions of the

21  Federal Water Pollution Control Act, 33 U.S.C. §1365, commonly known as the Clean

22  Water Act ("CWA"); the Comprehensive Environmental Response Compensation and

23  Liability Act, 42 U.S.C. §9659, ("CERCLA"); and the Emergency Planning and

24  Community Right-to-Know Act, 42 U.S.C. §11046, ("EPCRA").   Defendant has

25  discharged pollutants into the waters of the United States and the waters of the state

26  without a permit, in violation of §301(a) of the CWA, 33 U.S.C. §1311(a), and the

27  Washington Clean Water Act, RCW 90.48.160, respectively.   In addition, defendants

28  COMPLAINT                                          Page 1

1  have failed to properly report and continue to fail to properly report their releases of

2  hazardous substances, in violation of CERCLA section 103, 42 U.S.C. 9603(a), and

3  EPCRA section 304, 42 U.S.C. 11004.

4          2.      Plaintiff seeks a declaratory judgment, injunctive relief, remedial relief,

5  the imposition of civil penalties, and the award of costs, including attorney and expert

6  witness fees.

7                          **JURISDICTION AND VENUE**

8          3.      This Court has subject matter jurisdiction over the claims specified in this

9  Complaint pursuant to 33 U.S.C. § 1365(a), 42 U.S.C. § 9659(a), 42 U.S.C. §

10  11046(a) and 28 U.S.C. § 1331.  The relief requested is authorized pursuant to 33

11  U.S.C. §§ 1319(d), 1365(a) and (d), 42 U.S.C. §§ 9609(c) and 9659(c), 42 U.S.C. §§

12  11045(b) and 11046(c) and 28 U.S.C. §§ 2201 and 2202.

13          4.      In compliance with 33 U.S.C. § 1365(b)(1)(A), 42 U.S.C. § 9659(d)(1)

14  and 42 U.S.C. § 11046(d)(1), on January 15, 2004, plaintiff gave notice of the

15  violations specified in this complaint and of its intent to file suit to the defendants, to

16  the Administrator of the U.S. Environmental Protection Agency (EPA), to the

17  Regional Administrator of the EPA, to the Washington Department of Ecology

18  (DOE), to the President of the United States, and all other required entities.  A copy

19  of the notice letter is attached hereto as Exhibit A.

20          5.      More than sixty days have passed since notice was served, and the

21  violations complained of in the notice are continuing at this time, or are reasonably

22  likely to continue. Defendants remain in violation of the CWA, the Washington Clean

23  Water Act, CERCLA and EPCRA. Neither the EPA nor the State of Washington has

24  commenced or is diligently prosecuting a civil or criminal action to redress the

25  violations. Any enforcement related activities undertaken by the State of Washington

26  do not constitute diligent prosecution under 33 U.S.C. § 1319(g).

27

28  COMPLAINT                                                    Page 2

6.      Venue is appropriate in the Eastern District of Washington pursuant to 33 U.S.C. § 1365(c)(1), 42 U.S.C. § 9659(b)(1), and 42 U.S.C. § 11046(b)(1), because the sources of all violations complained of have occurred in the District.

**PLAINTIFF**

7.      Plaintiff, Community Association for Restoration of the Environment, Inc. (CARE), is a nonprofit corporation organized under the laws of the State of Washington. CARE's principal office is located in Outlook, Washington. CARE also has a Royal City, Washington Chapter.

8.      CARE's members reside in Grant County, including in and around the city of Royal City, Washington, near which defendants' dairy is located.  The environmental, health, aesthetic, economic and recreational interests of CARE's members have been, are being, and will be adversely affected by defendants' illegal and improperly reported discharges. Members of CARE use and enjoy the waters and lands associated with the runoff from defendants' dairy, including waters in the immediate vicinity of, and downstream from, defendants' discharges into waters of the United States.  The waters eventually end up in the Columbia River.  Plaintiff's members specifically use, recreate in and enjoy these areas in the following ways:

a.      CARE's members live within the watershed impacted by discharges from defendants' dairy;

b.      CARE's members engage in recreational activities – including but not limited to fishing, rafting, hiking, walking and boating – in and around the waters impacted by discharges from defendants' dairy;

c.      CARE's members observe and enjoy wildlife in the watershed around defendants' dairy;

d.      CARE's members have an aesthetic and health interest in keeping the waters in the vicinity of defendants' dairy free of animal manure.

e.      CARE's members breathe the air into which defendants' release

COMPLAINT                                                          Page 3

the hazardous substances which they have failed to properly report pursuant to CERCLA and EPCRA. Such hazardous substances can cause deleterious effects to human health and wildlife and cause noxious odors which are offensive and interfere with members' use and enjoyment of property.

f.    CARE's members use surface and groundwater which is impacted by discharges from defendants' operations.

9.    CARE is a grassroots organization made up of concerned community members. CARE's mission is to inform Grant Valley and Washington state residents about activities that endanger the health and quality of life for current and future residents through education and citizen empowerment and to advocate for actions to protect and restore the economic, social and environmental resources of the region. Plaintiff CARE has standing in this suit to protect its own interests and those of its individual members in a representative capacity. CARE's organizational purposes are adversely affected by defendants' discharges of pollutants and releases of hazardous substances, which degrade waters and adjacent lands and impair the habitability, recreational value, and aesthetic benefits of the local communities.

10.    Defendants' discharges alleged herein have adversely affected and continue to adversely affect CARE's members' above-described use and enjoyment of the waters, air and land affected by defendants' discharges and releases.

11.    Enforcement of the CWA, CERCLA, EPCRA, and state law will help restore and preserve water and air quality, thereby promoting the objectives of CARE and the use and enjoyment of the area by its members.

## DEFENDANTS

12.    Defendant Smith Brothers Farms, Inc., a Kent, Washington-based for-profit corporation organized under the laws of the State of Washington owns and operates the Smith Brothers Dairy in Royal City, Washington.

13.    Smith Brothers Dairy is a Concentrated Animal Feedlot Operation

COMPLAINT                                                          Page 4

1 (CAFO) located at 11792 Road 12.5 SW, Royal City, Washington.

2 **FACTS**

3     14.    Smith Brothers Dairy is a Concentrated Animal Feeding Operation, as

4 defined by federal regulations.  40 C.F.R. § 122.23.  CAFOs are considered point

5 sources under the CWA and the Washington Clean Water Act.  33 U.S.C. § 1362(14)

6 and WAC 173.220.030(18), respectively.

7     15.    Section 301 of the CWA, 33 U.S.C. § 1311(a), and the Washington Clean

8 Water Act, RCW 90.48.160, prohibit the discharge of any pollutant from a point

9 source into waters of the United States unless such discharge is permitted by a

10 National Pollution Discharge Elimination System ("NPDES") permit.

11     16.    Upon information and belief, Smith Brothers Dairy has not been issued

12 any NPDES permit.

13     17.    Even with a NPDES permit, the Washington general NPDES permit for

14 CAFOs prohibits discharge of any animal manure wastes except where such discharge

15 is due to or a direct result of a "25-year 24-hour rainfall event for that location."

16     18.    Upon information and belief, plaintiff alleges that defendants have

17 repeatedly discharged and continue to discharge pollutants through a point source or

18 point sources into waters of the United States, including springs, wetlands, streams

19 and irrigation and drainage canals, including, but not limited to, Canals RB5J2A, RB5

20 RB5J, and RB5J24, and Drain Culvert and Spillway DRB5J, and Sand Hollow Creek,

21 all of which eventually discharge into the Columbia River.  Some or all of these

22 waterways are part of the Quincy-Columbia Irrigation District.

23     19.    Upon information and belief, plaintiff alleges that defendants' point

24 sources include but are not limited to the CAFO itself, lagoons, pipes, irrigation lines,

25 waste piles, hauling equipment, ditches, over-application of animal wastes and

26 applications to frozen and/or saturated ground causing discharges through field tiles

27 and the shallow aquifer or water table.

28 COMPLAINT                                                     Page 5

20.     Upon information and belief, plaintiff alleges that defendants have discharged and continue to discharge, pollutants, including but not limited to, liquid and solid animal wastes. Such wastes contain, among other pollutants, fecal coliform and E. coli bacteria and other pathogenic substances such as salmonella, cryptosporidium parvum and giardia lamblia, phosphorus, ammonia, nitrogen, nitrates, antibiotics, synthetic hormones, heavy metals and suspended solids and have the effect of altering water quality indicator parameters such as biochemical oxygen demand and pH.

21.     Upon information and belief, plaintiff alleges that defendants have discharged and continue to discharge, pollutants, including but not limited to, liquid and solid animal wastes into ground water that is hydrologically connected to surface waters.

22.     Plaintiff further alleges that Smith Brothers' discharges are inconsistent with agricultural practice requirements as set forth in national effluent guidelines for CAFOs, in the State of Washington's General NPDES Permit for CAFOs to which Smith Brothers should be subject, in Natural Resource Conservation Service guidelines, in waste management plan requirements and guidelines, and in other applicable requirements.

23.     The springs, wetlands, streams and irrigation and drainage canals, ditches and draws, and the Columbia River, into which defendants have discharged and are reasonably likely to continue to discharge pollutants, are "waters of the United States" as defined in federal regulations, 40 CFR § 122.2, and "waters of the State" as defined in the Washington Clean Water Act, RCW 90.48.020.

24.     Upon information and belief, these discharges occurred on or around the dates set forth in the Notice attached as Exhibit A.

25.     Upon information and belief, plaintiff alleges that defendants have also discharged illegally on the dates listed in Exhibit B, which contains additional

COMPLAINT                                                      Page 6

1  discharges plaintiffs learned of after sending the notice letter. In addition, defendants

2  discharge on an ongoing basis to groundwater which is hydrologically connected to

3  surface waters around the facility.

4       26.    Upon information and belief, plaintiff alleges that defendants' discharges

5  alleged herein were not due to or a direct result of a "25-year 24-hour rainfall event

6  for that location."

7       27.    Upon information and belief, plaintiff alleges that defendants have

8  discharged without an individual stormwater permit. Defendants are subject to

9  national performance standards under 33 U.S.C. § 1316. As an industrial facility

10  subject to effluent limitations for stormwater, defendants are required to have an

11  individual NPDES stormwater permit. Defendants' facility is not designed nor

12  constructed to contain the requisite process waste and stormwater in the event of a 25-

13  year 24-hour rainfall event. This is demonstrated by the fact that this winter, the

14  defendants' lagoons had reached capacity and other means of disposal were being

15  used on the property, such as an unlined pit on the northern border of defendants'

16  property.

17       28.    The EPA establishes reporting requirements for releases of threshold

18  quantities of hazardous substances pursuant to Section 102 of CERCLA, 42 U.S.C.

19  § 9602. Ammonia and hydrogen sulfide are hazardous substances under the CERCLA

20  regulations. The reportable quantity for release of ammonia or hydrogen sulfide is

21  100 pounds per day. 40 C.F.R. § 302.4 and 40 C.F.R. part 355 Exhibit A.[1] Any

22  release of these chemicals exceeding 100 pounds per day must be reported promptly.

23  Reportable releases include emissions into the water and ambient air.

24       29.    Section 103(a) of CERCLA, 42 U.S.C. § 9603(a), requires any person in

25  charge of a "facility" to report any release of a hazardous substance in a quantity equal

26

[1] See http://www.access.gpo.gov/nara/cfr/waisidx_03/40cfr302_03.html for the

27  relevant listing.

28  COMPLAINT                                       Page 7

1 | to or greater than the established reportable quantity to the National Response Center.

2 |     30.    Defendants' operations are facilities as defined under CERCLA. 42
3 | U.S.C. § 9601(a)(9).

4 |     31.    Upon information and belief, plaintiffs assert that defendants have
5 | released and continue to release more than one hundred pounds per day each of
6 | ammonia and hydrogen sulfide to the ambient air and/or surrounding waters from the
7 | Smith Brothers Dairy near Royal City, WA, and have failed to provide adequate legal
8 | notice of reportable releases to the National Response Center in violation of
9 | CERCLA, 42 U.S.C. § 9603(a). Any reports submitted by defendants fail to meet the
10 | notice requirements established by law.

11 |     32.    Section 304 of EPCRA, 42 U.S.C. § 11004, requires emergency
12 | notification of any release of a reportable quantity of a hazardous substance subject
13 | to the notification requirement of CERCLA to the emergency coordinator for the local
14 | emergency planning committee and the State emergency planning commission.

15 |     33.    Defendants' operations release reportable quantities of ammonia and
16 | hydrogen sulfide under CERCLA. Consequently, under EPCRA and its implementing
17 | regulations, defendants are required to provide notice of reportable releases to the
18 | appropriate federal, state and local emergency response officials.

19 |     34.    Plaintiff is informed and believes that defendants have released and
20 | continue to release more than one hundred (100) pounds per day of ammonia and
21 | hydrogen sulfide, the threshold release reporting requirement for these two substances,
22 | to the ambient air and/or surrounding waters from the Smith Brothers Dairy near
23 | Royal City, WA, and have failed to provide adequate and proper notice to the
24 | appropriate entities including but not limited to the emergency coordinator for the
25 | local and State emergency planning committees.

28 | COMPLAINT                           Page 8

## ALLEGATIONS
## COUNT 1
### Discharge of Pollutants Without NPDES Permit

35.    Plaintiff realleges paragraphs 1-34.

36.    Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants from a point source into navigable waters of the United States, unless pursuant to the terms of a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

37.    Defendants have discharged and continue to discharge pollutants from one or more point sources at the Smith Brothers Dairy into waters of the United States and waters of the State without obtaining a NPDES permit.

38.    By discharging manure wastewater and other pollutants associated with process wastes without a permit into waters of the United States as detailed herein, defendants have violated and continue to violate section 301(a) of the CWA, 33 U.S.C. § 1311(a).

## COUNT 2
### Discharge of Pollutants Not Permitted Under Federal Law

39.    Plaintiff realleges paragraphs 1-38.

40.    Federal effluent limitations for CAFOs provide that there shall be no discharges of process waste water pollutants into waters of the United States unless such discharge is caused by a 25-year 24-hour rainfall event. 40 C.F.R. §§ 412.13 (a), (b).

41.    By discharging pollutants as detailed herein, defendants have violated federal effluent standards that would have been contained in a NPDES permit, had defendants obtained that required permit.

COMPLAINT                                                                    Page 9

**COUNT 3**
**Discharge of Stormwater Not Permitted Under Federal Law**

42.    Plaintiff realleges paragraphs 1-41.

43.    Defendants are subject to national standards of performance for the control of the discharge of pollutants. 33 U.S.C. § 1316. As an industrial facility subject to effluent limitations for stormwater, 40 C.F.R. 122.26, defendants are required to have an individual NPDES stormwater permit.

44.    By having a facility that is not designed nor constructed to contain the requisite stormwater in the event of a 25-year 24-hour rainfall event as detailed herein, defendants have violated national standards of performance. Operating without a NPDES stormwater permit also constitutes a violation of 33 U.S.C. 1316.

**COUNT 4**
**Violations of CERCLA**

45.    Plaintiff realleges paragraphs 1-44.

46.    Section 103(a) of CERCLA, 42 U.S.C. § 9603(a), requires any person in charge of a "facility" to report any release of a hazardous substance in a quantity equal to or greater than the established reportable quantity to the National Response Center.

47.    By releasing hazardous substances, including at least ammonia and hydrogen sulfide, and failing to report such releases to the National Response Center as detailed herein, defendants violated their duties under CERCLA, 42 U.S.C. § 9603(a).

**COUNT 5**
**Violations of EPCRA**

48.    Plaintiffs reallege paragraphs 1-47.

49.    Section 304 of EPCRA, 42 U.S.C. § 11004, requires emergency notification of any release of a reportable quantity of a hazardous substance subject to the notification requirement of CERCLA to the emergency coordinator for the local emergency planning committee.

COMPLAINT                                                    Page 10

50.     By releasing hazardous substances, including at least ammonia and hydrogen sulfide, and failing to report such releases to local and State emergency planning committees as detailed herein, defendants violated their duties under EPCRA, 42 U.S.C. § 11004.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court grant plaintiff the following relief:

a.     Issue a declaratory judgment that defendants have violated and continue to violate the CWA, as alleged in counts one, two, and three, CERCLA as alleged in count four, and EPCRA as alleged in count five;

b.     Enjoin defendants from operating their dairy in such manner as will result in further violation of the CWA, CERCLA, and EPCRA. In particular, plaintiff seeks an order enjoining defendants from discharging any manure waste water to waters of the United States except where such discharge is due to or a direct result of a "25-year 24-hour rainfall event for that location", from discharging stormwater without an individual NPDES stormwater permit, and from releasing any hazardous substance without reporting as required under CERCLA and EPCRA;

c.     Order defendants to pay civil penalties of up to $27,500 per day of violation pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a), and pursuant to CERCLA 42 U.S.C. §§ 9609(c) and 9659, and EPCRA §§ 11045(b) and 11046(c), including violations listed in Exhibits A and B, those identified in this complaint and violations committed subsequent to those identified in this complaint;

d.     Authorize the plaintiff, for the period beginning on the date of the Court's order and running for two years after the defendants achieve compliance with the CWA, CERCLA, and EPCRA, to sample or arrange sampling of any discharge of pollutants or release of hazardous substances from the Smith Brothers Dairy, with the

COMPLAINT                                                              Page 11

1 | costs of the sampling to be borne by defendants;

2 |       e.     Order defendants to provide plaintiff, for a period beginning on the date
3 | of the Court's order and running for one year after defendants achieve compliance
4 | with the CWA, CERCLA, and EPCRA, with a copy of all reports and other
5 | documents which defendants submit to appropriate regulatory authorities under these
6 | statutes;

7 |       f.     Issue a remedial injunction ordering defendants to pay the cost of any
8 | environmental restoration or remediation deemed necessary and proper by the Court
9 | to ameliorate the water and air degradation caused by defendants' violations;

10 |       g.    Award plaintiff its costs, including reasonable attorney and expert
11 | witness fees, as authorized by 33 U.S.C. § 1365(d), 42 U.S.C. § 9659 (f), 42 U.S.C.
12 | § 11046 (f) and 28 U.S.C. § 2412(d); and

13 |       h.    Award such other relief as this Court deems appropriate.

Respectfully submitted this 3rd day of June, 2004,

Charles M. Tebbutt (OSB # 96579)
Andrea Rodgers (OSB #04102)
Western Environmental Law Center

Counsel for Plaintiff


Corrie Yackulic (WSBA #16063)
Schroeter, Goldmark & Bender

Local Counsel for Plaintiff

COMPLAINT                                         Page 12



# Western Environmental Law Center

*Defending the West*

**EUGENE OFFICE**
1216 Lincoln Street
Eugene, Oregon 97401
541/485-2471
541/485-2457 (fax)
eugene@westernlaw.org

**KETCHUM OFFICE**
P.O. Box 982
Ketchum, ID 83340
208/788-4398
208/788-7618 (fax)
mitchell@westernlaw.org

**TAOS OFFICE**
P.O. Box 1507
Taos, New Mexico 87571
505/751-0351
505/751-1775 (fax)
taos@westernlaw.org

www.westernlaw.org

January 15, 2004

CERTIFIED MAIL, RETURN RECEIPT REQUESTED

Ms. Alexis Koester
President
Smith Brothers Farms, Inc.
27441 68th Avenue South
Kent, Washington 98035

Mr. Shawn Raff
Manager
Smith Brothers Dairy
11792 Road 12.5 SW
Royal City, Washington 99357

Re: Notice of Intent to Sue under the CWA Regarding the Repeated Discharge of Manure from Smith Brothers Dairy into Waters of the United States without an NPDES Permit.And Under CERCLA and EPCRA for Failure to Report Releases of Hazardous Substances

Dear Ms. Koester & Mr.Raff:

This letter is to provide you with notice of intent of the Community Association for the Restoration of the Environment ("CARE"), a Washington not-for-profit corporation, to file a citizen suit against Smith Brothers Dairy and/or Feedlot, hereinafter Smith Brothers Dairy, located at 11792 Road 12.5 SW, Royal City, Washington, pursuant to section 505(a)(1)(A) of the federal Clean Water Act ("CWA"), 33 U.S.C. § 1365(a)(1)(A) , section 310(a)(1) of the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C. 9659(a)(1), and section 326(a)(1)(A)(i) of the Emergency Planning and Community Right-to-Know Act ("EPCRA"), 42 U.S.C. 11046(a)(1)(A)(i).

Violations of the Clean Water Act

This lawsuit will allege that Smith Brothers Dairy has violated and will continue to violate the Clean Water Act, and applicable state water pollution control laws, including but not limited to, Water Quality Standards for Surface Waters of the State of Washington, WAC 173-201A, et seq.  Smith Brothers Dairy is a Concentrated Animal Feeding Operation ("CAFO") as defined in 40 C.F.R. § 122.23.  CAFOs are considered point sources under the Clean Water Act.  33 U.S.C. § 1362(14).  Smith Brothers Dairy has violated and continues to violate the Clean Water Act in the following manner.

Exhibit __A__
Page __1__

1

Section 301 of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant from a point source into waters of the United States unless such discharge is authorized pursuant to a National Pollutant Discharge Elimination System ("NPDES") permit.

Smith Brothers Dairy has discharged, and continues to discharge, pollutants through a point source or point sources into waters of the United States, including springs, wetlands, streams and irrigation and drainage canals, including, but not limited to, Canals RB5J2A, RB5 RB5J, and RB5J24, and Drain Culvert and Spillway DRB5J, all of which eventually discharge into the Columbia River. The point sources include but are not limited to the CAFO itself, as defined by the Clean Water Act and applicable case law, pipes, irrigation lines, waste piles, ditches, overapplication of animal wastes causing discharges through field tiles, applications to frozen and/or saturated ground, and all other activities inconsistent with good agricultural practices and the requirements set forth in national effluent guidelines for CAFOs, requirements set forth in the State of Washington's General NPDES Permit for CAFOs to which Smith Brothers should be subject, Natural Resource Conservation Service guidelines, waste management plan requirements and guidelines, and all other applicable requirements.

Smith Brothers Dairy has discharged, and continues to discharge, pollutants, including but not limited to, liquid and solid animal wastes. Such wastes contain, among other pollutants, fecal coliform and E. coli bacteria, other pathogenic substances, phosphorus, ammonia, nitrogen, nitrates, antibiotics, synthetic hormones, and suspended solids and have the effect of altering water quality indicator parameters such as biochemical oxygen demand and pH. Smith Brothers Dairy has never obtained a NPDES permit for such discharges and even if a NPDES permit were obtained, the type of discharges that have occurred would be in violation of such permit conditions and, moreover, could not be permitted under federal law. Smith Brothers Dairy continues to illegally discharge pollutants into waters of the United States and the State of Washington without a NPDES permit, or in violation of such a permit if one were issued. In addition, Smith Brothers' operation and maintenance activities violate federal and state guidelines and have led to and will continue to lead to a reasonable likelihood of discharge violations.

Illegal discharges occurred on at least the following dates:

- **December 20, 2002-January 25, 2003**: Manure discharged into Canal RB5 from the banks of the dairy pens and/or feedlot.

- **August 22, 2003**: Overapplication of manure and irrigation water to a field located on Road 12 between Roads G and H causing a discharge to a roadside ditch.

Illegal operational failures that have a reasonable likelihood of causing discharges into waters of the United States in violation of the Clean Water Act occurred on at least the following dates:

- **August-December 2002**: Large pile of manure stockpiled on Unit 90 Block 81.

- **September 2002**: Liquid manure on Adams Road between Road 11 and Road 10.

- **November 20, 2003**: Solid and liquid waste spilled on partially snow-covered Road 12 SW between Road K and Road I.

Exhibit __A__
Page __2__

- **November 20, 21, 2003**: Green water dumped on frozen ground at Jim Dykes Circle at Road 12.5 and Road K.

- **November 22, 2003**: Manure dumped on Canal Road between Road M and Road N when ground was frozen.

- **November 30, 2003**: Manure on Road 12 and in ditch along side Road 12 in between K and I Roads.

- **December 2, 2003**: Manure on Road 12 between K and I Roads and spilling into adjacent barrow pit.

- **December 2, 2003**: Manure on Adams Road.

Notifier believes and alleges that a history of similar violations, and if different, all violations related to the improper construction, operation and maintenance of the Smith Brothers Dairy, has occurred. Such violations are known to the Dischargers and may be included in any future legal actions by Notifier. Such discharges may only be known to Dischargers and eyewitnesses who are yet to be determined since such discharges were not reported by Dischargers as required by law. Discharge violations of similar type and nature, including any and all construction, operation and maintenance problems, whether or not they have caused actual off-site discharges based on the fact that these problems contribute to the reasonable likelihood of continuing violations, will be included in any future complaint without further notice.

We intend, at the close of the sixty (60) day notice period, to file a citizen suit under section 505 of the Clean Water Act, 33 U.S.C. § 1365, against Smith Brothers Dairy for the statutory maximum of $27,500 per day for each violation stated above, in addition to those violations not specified in this letter that have occurred of which Dischargers are or should be aware and those violations occurring subsequent to this letter, plus injunctive and remedial relief, costs, attorney and expert witness fees, and such other relief as may be appropriate.

Violations of CERCLA and EPCRA

The lawsuit will also contain allegations that you have violated CERCLA and EPCRA. CERCLA and EPCRA require that you submit to federal, state, and local authorities detailed reports of your releases of certain federally-designated hazardous substances, including ammonia ($NH_3$) and hydrogen sulfide ($H_2S$). Ammonia and hydrogen sulfide are on the federal lists of hazardous and extremely hazardous substances. See 40 C.F.R. § 302.4, and 40 C.F.R. part 355 Appendix A.

You have violated and continue to violate CERCLA, 42 U.S.C. § 9603(a), and EPCRA, 42 U.S.C. § 11004, as well as federal regulations implementing these statutes, by failing to report your releases of more than one-hundred (100) pounds per day of ammonia and hydrogen sulfide to the ambient air and/or surrounding waters from the Smith Brothers Dairy near Royal City, WA. Plaintiffs are informed and believe such violations have occurred on a daily basis since the dairy began to operate over two (2) years ago and continue to occur.

CERCLA authorizes citizen enforcement actions in federal court "against any person . . . who is alleged to be in violation of any standard, regulation, condition, requirement, or order which has become

3

Exhibit A
Page 3

effective pursuant to this chapter . . .". 42 U.S.C. § 9659(a).  EPCRA likewise authorizes citizen suits for failure to comply with reporting requirements for releases of hazardous substances. 42 U.S.C. § 11046(a)(1)(A)(i).  CARE may seek civil penalties of up to $27,500 per day for each violation, declaratory relief, injunctive relief from the court to remedy your violations, as well as attorney and expert fees and costs.  You are hereby given notice that, upon the expiration of the sixty (60) day statutory waiting period, CARE will file a civil action in federal district court concerning these violations.

The name, address and phone number of the person giving Notice of Intent to Sue under the Clean Water Act, CERCLA and EPCRA is:

Community Association for Restoration of the Environment, Inc.
2241 Hudson Road
Outlook, Washington 98938
Tel: (509) 854-1662

The names, addresses and phone numbers of counsel for Notifier are:

Charles M. Tebbutt
Western Environmental Law Center
1216 Lincoln Street
Eugene, Oregon 97401
Tel: (541) 485-2471
Fax: (541) 485-2457

We will be available to discuss effective remedies and actions that will assure Smith Brothers Dairy's future compliance with the Clean Water Act and all applicable state water pollution control laws as well as CERCLA and EPCRA.  In addition, we welcome discussion about any facts you believe relevant that are not itemized in this notice letter.  If you wish to avail yourself of this opportunity, or if you have any questions regarding this letter, please contact the undersigned.

Sincerely,

Charles M. Tebbutt
Western Environmental Law Center

cc:  all via certified mail, return receipt requested, unless otherwise noted:
George Bush, President
John Ashcroft, U.S. Attorney General
Christine Gregoire, Attorney General, State of Washington
Gary Locke, Governor, State of Washington
Michael O. Leavitt, Administrator U.S. EPA
John Iani, Administrator U.S. EPA, Region X
DWTR&J CORP, Registered Agent
Linda Hoffman, Interim Director, Washington State Department of Ecology (via U.S. Mail)
Valoria H. Loveland, Director, Washington State Department of Agriculture (via U.S. Mail)

4

Exhibit A
Page 4



| Northwest | Southwest | Rocky Mountains |
|---|---|---|
| 1216 Lincoln Street | P.O. Box 1507 | 223 North 6th Street, Suite 300 |
| Eugene, Oregon 97401 | Taos, New Mexico 87571 | Boise, Idaho 83702 |
| 541-485-2471 | 505-751-0351 | 208-342-2216 |
| fax 485-2457 | fax 751-1775 | fax 424-0000 |
| eugene@westernlaw.org | taos@westernlaw.org | fink@westernlaw.org |

www.westernlaw.org

# Western Environmental Law Center

**Defending the West** Land, Sky, Water, Wildlife, Culture

May 26, 2004

CERTIFIED MAIL, RETURN RECEIPT REQUESTED

Ms. Alexis Koester
President
Smith Brothers Farms, Inc.
27441 68th Avenue South
Kent, Washington 98035

Mr. Shawn Raff
Manager
Smith Brothers Dairy
11792 Road 12.5 SW
Royal City, Washington 99357

Re: Supplemental Notice of Intent to Sue under the CWA Regarding the Repeated Discharge of Manure from Smith Brothers Dairy into Waters of the United States without an NPDES Permit And Under CERCLA and EPCRA for Failure to Report Releases of Hazardous Substances

Dear Ms. Koester & Mr.Raff:

This letter is to provide you with supplemental notice of intent to sue of Community Association for Restoration of the Environment (CARE) and named individuals, both individually and in their capacity as members of CARE and as representatives of other people in their community affected by pollution from Smith Brothers Dairy. In addition to CARE, Richard and Cindy Carter, Rodney Ettles, Ronald Ettles, Dixie Ettles, Norman and Mary Jane Spragg, Michael Brown, Michael and Charlene Mathews, Dennis and Sherrie Smith and Henry Lee are also giving notice of intent to file a citizen suit against Smith Brothers Farm, Inc. and Smith Brothers Dairy and/or Feedlot, hereinafter Smith Brothers Dairy, located at 11792 Road 12.5 SW, Royal City, Washington, pursuant to section 505(a)(1)(A) of the federal Clean Water Act ("CWA"), 33 U.S.C. § 1365(a)(1)(A) , section 310(a)(1) of the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C. 9659(a)(1), and section 326(a)(1)(A)(i) of the Emergency Planning and Community Right-to-Know Act ("EPCRA"), 42 U.S.C. 11046(a)(1)(A)(i).

Exhibit B
Page 1

1

*90% post consumer waste, 10% hemp, unbleached, soy inks

Violations of the Clean Water Act

This lawsuit will allege that Smith Brothers Dairy has violated and will continue to violate the Clean Water Act, and applicable state water pollution control laws, including but not limited to, Water Quality Standards for Surface Waters of the State of Washington, WAC 173-201A, et seq. Smith Brothers Dairy is a Concentrated Animal Feeding Operation ("CAFO") as defined in 40 C.F.R. § 122.23. CAFOs are considered point sources under the Clean Water Act. 33 U.S.C. § 1362(14). Smith Brothers Dairy has violated and continues to violate the Clean Water Act in a number of respects.

Section 301 of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant from a point source into waters of the United States unless such discharge is authorized pursuant to a National Pollutant Discharge Elimination System ("NPDES") permit.

Smith Brothers Dairy has discharged, and continues to discharge, pollutants through a point source or point sources into waters of the United States, including springs, wetlands, streams, and irrigation and drainage canals, including, but not limited to, Canals RB5J2A, RB5 RB5J, and RB5J24, and Drain Culvert and Spillway DRB5J, some of which discharge into San Hollow Creek and all of which eventually discharge into the Columbia River. Smith Brothers has also discharged, and continues to discharge, pollutants through a point source or point sources into waters of the United States, including groundwater that is hydrologically connected to surface waters. The point sources include but are not limited to the CAFO itself, as defined by the Clean Water Act and applicable case law, pipes, irrigation lines, lagoons, waste piles, ditches, overapplication of animal wastes causing discharges through field tiles, applications to frozen and/or saturated ground, application of animal waste to unlined, non-engineered ponds on the Smith Brothers' property, and all other activities inconsistent with good agricultural practices and the requirements set forth in national effluent guidelines for CAFOs, requirements set forth in the State of Washington's General NPDES Permit for CAFOs to which Smith Brothers should be subject, Natural Resource Conservation Service guidelines, waste management plan requirements and guidelines, and all other applicable requirements.

Smith Brothers Dairy has discharged, and continues to discharge, pollutants, including but not limited to, liquid and solid animal wastes. Such wastes contain, among other pollutants, fecal coliform and E. coli bacteria, other pathogenic substances, phosphorus, ammonia, nitrogen, nitrates, antibiotics, synthetic hormones, heavy metals, and suspended solids and have the effect of altering water quality indicator parameters such as biochemical oxygen demand and pH. Smith Brothers Dairy has never obtained a NPDES permit for such discharges and even if a NPDES permit were obtained, the type of discharges that have occurred and are likely to continue to occur would be in violation of such permit conditions and, moreover, could not be permitted under federal law. Smith Brothers Dairy continues to illegally discharge pollutants into waters of the United States and the State of Washington without a NPDES permit, or in violation of such a permit if one were issued. In addition, Smith Brothers' operation and maintenance activities violate federal and state guidelines and have led to and will continue to lead to a reasonable likelihood of discharge violations.

Furthermore, Smith Brothers Dairy is subject to national performance standards under 33 U.S.C. 1316. As an industrial facility subject to effluent limitations for stormwater, Smith Brothers Dairy is required to have an individual NPDES stormwater permit. In general, the Smith Brothers Dairy facility is not designed and constructed to contain the requisite process waste and stormwater in the event of a

Exhibit____B____
Page____2____

25-year, 24-hour storm event.  Evidence of this problem was seen this past winter when the lagoons had reached capacity and other means of disposal were being used, such as unlined pits on the property.

Illegal discharges occurred on at least the following dates:

**December 20, 2002-January 25, 2003:** Manure discharged into Canal RB5 from the banks of the dairy pens and/or feedlot.

**August 22, 2003:** Overapplication of manure and irrigation water to a field located on Road 12 between Roads G and H causing a discharge to a roadside ditch.

**October 4, 2003:** Green water from Smith Brothers Dairy being discharged directly into the Royal Branch Canal 5 J (RB5J).

Illegal operational failures that have a reasonable likelihood of causing discharges into waters of the United States in violation of the Clean Water Act occurred on at least the following dates:

**August-December 2002:** Large pile of manure stockpiled on Unit 90 Block 81.

**September 2002:** Liquid manure on Adams Road between Road 11 and Road 10.

**November 20, 2003:** Solid and liquid waste spilled on partially snow-covered Road 12 SW between Road K and Road I.

**November 20, 21, 2003:** Green water dumped on frozen ground at Jim Dykes Circle at Road 12.5 and Road K.

**November 22, 2003:** Manure dumped on Canal Road between Road M and Road N when ground was frozen.

**November 30, 2003:** Manure on Road 12 and in ditch along side Road 12 in between K and I Roads.

**December 2, 2003:** Manure on Road 12 between K and I Roads and spilling into adjacent barrow pit.

**December 2, 2003:** Manure on Adams Road.

**March 30, 2004-April 2, 2004** and thereafter: Application of waste on a continuous or intermittent basis to an unlined, non-engineered pit located on the Smith Brothers' Dairy property.  The pit discharges into shallow groundwater that is hydrologically connected to surface waters near the Dairy property, which in turn discharge directly into the Columbia River.

Furthermore, manure and wastewater handling, application and disposal practices have caused and will continue to cause discharges to groundwater that is hydrologically connected to irrigation drains and ditches which run through, are adjacent to or are in proximity to the Smith Brothers Dairy. Such drains and ditches are known to Smith Brothers Dairy and are located on irrigation district maps in

3

Exhibit ___B___
Page ___3___

the possession of or known to Smith Brothers Dairy. The hydrological connections occur through discharges to a shallow water table which feeds irrigation ditches and drains both directly and through field tiles which then discharge into the irrigation drains and ditches. Smith Brothers is aware of or should be aware of such connections.

In addition, the piping that has been and is being laid to carry manure contaminated wastewater to be used for irrigation by agricultural operations other than Smith Brothers is the responsibility of Smith Brothers. Any discharges to surface waters or overapplications of Smith Brothers' manure wastewater that discharges to surface waters through hydrologically connected groundwater also violates the Clean Water Act.

Notifier believes and alleges that a history of similar violations, and if different, all violations related to the improper construction, operation and maintenance of the Smith Brothers Dairy, has occurred. The discharges to surface water through hydrologically connected groundwater discussed herein are of the related type of discharges referenced in the original notice of intent to sue dated January 15, 2004. This supplemental notice is protective in nature and in no way constitutes an admission that the previous notice of intent to sue was incomplete in any material respect. All related violations not set forth specifically in the January 15, 2004 notice letter or in this letter are violations that are or should be known to the Dischargers and may be included in any future legal actions by Notifier. Such discharges may only be known to Dischargers and eyewitnesses who are yet to be determined since such discharges were not reported by Dischargers as required by law. Discharge violations of similar type and nature, including any and all construction, operation and maintenance problems, whether or not they have caused actual off-site discharges based on the fact that these problems contribute to the reasonable likelihood of continuing violations, will be included in any future complaint without further notice.

We intend, at the close of the sixty (60) day notice period, if not sooner based upon the January 15, 2004 notice letter, to file a citizen suit under § 505 of the Clean Water Act, 33 U.S.C. § 1365, against Smith Brothers Dairy for the statutory maximum of $27,500 per day for each violation stated above, in addition to those violations not specified in this letter that have occurred of which Dischargers are or should be aware and those violations occurring subsequent to this letter, plus injunctive and remedial relief, costs, attorney and expert witness fees, and such other relief as may be appropriate.

Violations of CERCLA and EPCRA

The lawsuit will also contain allegations that you have violated CERCLA and EPCRA, which require that you submit to federal, state, and local authorities detailed reports of your releases of certain federally-designated hazardous substances, including ammonia ($NH_3$) and hydrogen sulfide ($H_2S$). Ammonia and hydrogen sulfide are on the federal lists of hazardous and extremely hazardous substances. See 40 C.F.R. § 302.4, and 40 C.F.R. part 355 Appendix A.

You have violated and continue to violate CERCLA, 42 U.S.C. § 9603(a), and EPCRA, 42 U.S.C. § 11004, as well as federal regulations implementing these statutes, by failing to adequately report your releases of more than one-hundred (100) pounds per day of ammonia and hydrogen sulfide to the ambient air and/or surrounding waters from the Smith Brothers Dairy near Royal City, WA. Plaintiffs are informed and believe such violations have occurred on a daily basis since the dairy began to operate over two (2) years ago and continue to occur.

Exhibit___B___
Page___4___

4

CERCLA authorizes citizen enforcement actions in federal court "against any person . . . who is alleged to be in violation of any standard, regulation, condition, requirement, or order which has become effective pursuant to this chapter . . ." 42 U.S.C. § 9659(a).   EPCRA likewise authorizes citizen suits for failure to comply with reporting requirements for releases of hazardous substances. 42 U.S.C. § 11046(a)(1)(A)(i).  CARE may seek civil penalties of up to $27,500 per day for each violation, declaratory relief, injunctive relief from the court to remedy your violations, as well as attorney and expert fees and costs.  You are hereby given notice that, upon the expiration of the sixty (60) day statutory waiting period, CARE will file a civil action in federal district court concerning these violations.

The name, address and phone number of the people giving Notice of Intent to Sue under the Clean Water Act, CERCLA and EPCRA is:

Community Association for Restoration of the Environment, Inc.
2241 Hudson Road
Outlook, Washington 98938
Tel: (509) 854-1662

Richard & Cindy Carter
10402 Hwy 26 West
Royal City, Washington 99357
Tel: (509) 346-9323

Rodney Ettles
Ronald Ettles
11858 Adams Rd. So.
Royal City, Washington 99357
Tel: (509) 346-2519

Dixie Ettles
11708 Adams Rd. So.
Royal City, Washington 99357
Tel: (509) 346-9929

Norman & Mary Jane Spragg
11870 Rd. H SW
Royal City, Washington 99357
Tel: (509) 346-9773

Henry Lee
17514 Rd. 11 SW
Royal City, Washington 99357
Tel: (509) 989-1735

Michael Brown
12088 Adams Rd. South
Royal City, Washington 99357

Exhibit B
Page 5

Tel: (509) 346-2294

Michael & Charlene Mathews
12609 Adams Rd. South
Royal City, Washington 99357
Tel: (509) 346-9417

Dennis & Sherrie Smith
12263 Hwy 26 W
Royal City, Washington 99357


The names, addresses and phone numbers of counsel for Notifier are:

Charles M. Tebbutt
Andrea K. Rodgers
Western Environmental Law Center
1216 Lincoln Street
Eugene, Oregon 97401
Tel: (541) 485-2471
Fax: (541) 485-2457


We will be available to discuss effective remedies and actions that will assure Smith Brothers Dairy's future compliance with the Clean Water Act and all applicable state water pollution control laws as well as CERCLA and EPCRA. In addition, we welcome discussion about any facts you believe relevant that are not itemized in this notice letter. If you wish to avail yourself of this opportunity, or if you have any questions regarding this letter, please contact the undersigned.


Sincerely,

Charles M. Tebbutt
Andrea K. Rodgers
Western Environmental Law Center

cc: all via certified mail, return receipt requested, unless otherwise noted:
George Bush, President
John Ashcroft, U.S. Attorney General
Christine Gregoire, Attorney General, State of Washington
Gary Locke, Governor, State of Washington
Michael O. Leavitt, Administrator, U.S. EPA
John Iani, Administrator, Region 10, U.S. EPA
DWTR&J CORP, Registered Agent
Linda Hoffman, Interim Director, Washington State Department of Ecology (via U.S. Mail)
Valoria H. Loveland, Director, Washington State Department of Agriculture (via U.S. Mail)

Exhibit ___B___
Page ___6___