UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| COMMUNITY ASSOCIATION FOR THE RESTORATION OF THE ENVIRONMENT, a Washington nonprofit corporation,<br><br>Plaintiff,<br><br>v.<br><br>NELSON FARIA DAIRY, INC.,<br><br>Defendant. | No. CV-04-3060-LRS<br><br>**ORDER RE MOTION FOR ORDER OF CONTEMPT** |

**BEFORE THE COURT** is Plaintiff's "Motion For Order Of Contempt Or, In The Alternative, Partial Summary Judgment" (Ct. Rec. 76). Oral argument was heard on December 16, 2010. Charles M. Tebbutt, Esq., argued for Plaintiff. John R. Nelson, Esq., argued for the Defendant.

**I. VIOLATIONS OF THE CONSENT DECREE**

There are no genuine issues of material fact precluding the court from finding as a matter of law that Defendant has violated and failed to substantially comply with the May 23, 2006 Consent Decree in the following enumerated respects:

1) Defendant "admits that it inadvertently failed to provide reporting

**ORDER RE MOTION FOR ORDER OF CONTEMPT-    1**

information to plaintiff by January 31, 2007 and 2008." (Ct. Rec. 67 at Paragraph 8). This pertains to Paragraph 11 of the Consent Decree. Mr. Faria says "the notification provisions of the Consent Decree slipped his mind." (Ct. Rec. 89 at p. 7).

2) Defendant "admits that it stopped using twelve aerators at some time in 2007." (Ct. Rec. 67 at Paragraph 10). This pertains to Paragraph 13b. of the Consent Decree.

3) Defendant "admits it did not conduct water sampling in 2008." (Ct. Rec. 67 at Paragraph 13). This pertains to Paragraph 15 of the Consent Decree regarding "Lagoon Water Quality Monitoring." Defendant also admits that although it did a water quality analysis in October 2007, "it was not compliant with all Consent Decree parameters." (Ct. Rec. 89 at p. 7).

4) Defendant failed to comply with EPCRA/CERCLA reporting requirements for ammonia in violation of Paragraph 20 of the Consent Decree. Defendant did not submit written notifications of estimated ammonia emissions to the U.S. Environmental Protection Agency and other appropriate agencies.

5) Defendant removed the treatment lagoon cover in violation of Paragraph 13e. of the Consent Decree. (See Declaration of Nelson Faria, Ct. Rec. 90 at Paragraph 8).

6) Defendant failed to use and properly maintain the vacuum scrape/composting manure management system in violation of Paragraph 12 of the Consent Decree. (See Declaration of Nelson Faria, Ct. Rec. 90 at Paragraph 7).

**ORDER RE MOTION**
**FOR ORDER OF CONTEMPT-    2**

7) Defendant failed to conduct proper annual water balances in compliance with Paragraph 18 of the Consent Decree.

8) From December 2006 to January 2009, due to an increase in herd size, Defendant operated its dairy in violation of the Dairy Nutrient Management Program (DNMP) in existence at the time. This was in contravention of Paragraph 5 of the Consent Decree.

## II. NPDES PERMIT

Paragraph 5 of the Consent Decree states that "[i]n operating the Dairy, the Defendants shall abide by CERCLA, EPCRA, CWA, and **any applicable** Washington National Pollution Discharge Elimination System ("NPDES") permit and the Dairy's nutrient waste management plan." (Emphasis added). The plain language arguably indicates a permit may or may not be required, not that a permit is in fact required. The word "any" suggests there may be no applicable permit. As Defendant points out, there is case law which supports that notion. *Waterkeeper Alliance, Inc. v. United States Environmental Protection Agency*, 399 F.3d 486, 504-05 (2nd Cir. 2005), involved a challenge to an EPA rule requiring all Concentrated Animal Feeding Operations (CAFOs) to apply for an NPDES permit regardless of whether they had in fact discharged any pollutants under the Clean Water Act. The court held:

> Congress left little room for doubt about the meaning of the term "discharge of any pollutant." The [Clean Water] Act expressly defines the term to mean "(A) any addition of any pollutant to navigable waters from any point source, [or] (B) any addition of any pollutant to the waters of the contiguous zone or the ocean from any point source other than a vessel or other floating craft." 33 U.S.C. § 1362(12). Thus, in the absence of an actual addition of any pollutant to navigable waters from any point, there is no point source discharge, no statutory violation, no statutory obligation of point sources to comply with EPA regulations for point source discharges, **and no statutory obligation of point sources to seek or obtain an NPDES permit in the first instance**.

ORDER RE MOTION
FOR ORDER OF CONTEMPT-    3

(Emphasis added). In sum, "the Clean Water Act gives the EPA jurisdiction to regulate and control only actual discharges- not potential discharges, and certainly not point sources." *Id*. at 505. Plaintiff asserts *Waterkeeper* was "wrongly decided," but the decision is still good law and indeed, has even been cited by a district court within the Ninth Circuit for the specific proposition discussed above. *Environmental Protection Information Center v. Pacific Lumber Company*, 469 F.Supp.2d 803, 826-27 (N.D. Cal. 2007). Furthermore, Washington's Department of Ecology apparently takes the view that whether a CAFO general permit applies depends on, among other things, "whether there is a discharge to waters of the state." *Community Ass'n for Restoration of Environment v. State, Dept. of Ecology*, 149 Wn.App. 830, 836 n.3, 205 P.3d 950 (2009). *Waterkeeper* is cited throughout this Washington Court of Appeals decision.

Defendant asserts it was not required to get an NPDES permit because it "does not discharge or plan to discharge pollutants to surface waters of the United States." Plaintiff's response is that *Waterkeeper* does not apply to Defendant "because its predecessor in interest [Smith Brothers] was operating under the general NPDES [permit] at the time the Consent Decree was filed and expressed its intention to continue to so operate through the period of the Consent Decree." In a March 2005 letter to the Plaintiff, counsel for Smith Brothers urged the term of the consent decree be limited to three years in consideration of the fact "the Dairy will be under the State of Washington's new CAFO permit which is much more restrictive than the General Permit for Dairy Operations" and that "[t]hese and other applicable regulatory requirements will extend beyond the term of the consent decree." (See p. 30 to Ct. Rec. 78).

Assuming there is an ambiguity in the language of Paragraph 5 of the Consent Decree ("any applicable"), the court questions whether the extrinsic evidence offered by Plaintiff makes clear the Consent Decree required the dairy to have a NPDES permit no matter what. Smith Brothers believed the CAFO permit

**ORDER RE MOTION**
**FOR ORDER OF CONTEMPT-    4**

was an "applicable regulatory requirement[]," while Defendant Nelson Faria Dairy, Inc. believes it is not an "applicable regulatory requirement" for its dairy operation. According to Nelson Faria: "I assumed that the dairy had all necessary permits in place at purchase, but did not believe the dairy needed an NDPES permit." (Faria Declaration, Ct. Rec. 90 at Paragraph 11). Furthermore, assuming there is an ambiguity which necessitates extrinsic evidence to resolve, and the resolution is the decree did require an NPDES permit, it may be problematic to conclude Defendant violated an "unequivocal command of a court order" subjecting it to a contempt citation. *D. Patrick, Inc. v. Ford Motor Co.*, 8 F.3d 455, 460 (7th Cir. 1993). A party can only be held in contempt for behavior clearly prohibited by a court order "'within its four corners.'" *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 237, 95 S.Ct. 926 (1975) (quoting *United States v. Armour & Co.*, 402 U.S. 673, 682, 91 S.Ct. 1752 (1971)).

Although it appears there are no issues of material fact to preclude the court from determining as a matter of law whether the Consent Decree required Defendant to procure a NPDES permit, and indeed that this may even be a pure question of law, the court will withhold making that determination at this time pending presentation of any additional evidence at trial and further argument at the conclusion of trial.[1]

---

[1] If Plaintiff believes Defendant is required **as a matter of statute or regulation** to have an NDPES permit because Defendant is discharging pollutants or plans to discharge the same, it can attempt to establish that through appropriate proof and in turn, establish a violation of the Consent Decree.

**ORDER RE MOTION**
**FOR ORDER OF CONTEMPT-    5**

## III. EQUITABLE DEFENSES TO FINDING OF CONTEMPT

Defendant asserts certain equitable defenses to a finding of contempt: laches, equitable estoppel, and unclean hands.

It is well-established that the defense of "unclean hands" must relate to the Plaintiff's conduct in the subject matter of the action and the particular controversy at issue. *Portion Pack, Inc. v. Bond*, 44 Wn.2d 161, 170, 265 P.2d 1045 (1954), quoting *Income Investors, Inc. v. Shelton*, 3 Wn.2d 599, 602, 101 P.2d 973 (1940)("Equity will not interfere on behalf of a party who conduct in connection with the subject-matter or transaction in litigation has been unconscientious, unjust, or marked by the want of good faith, and will not afford him any remedy"). Accordingly, Mike Brown's alleged misdeeds concerning environmental issues unrelated to Defendant and the operation of its dairy under the Consent Decree do not constitute "unclean hands."

The validity of Defendant's laches and equitable estoppel defenses will be determined following trial. Plaintiff acknowledges it will be necessary for the court to consider the "circumstances, context and intent" under which conversations and interactions between Nelson Faria and Cindy Carter took place. The court anticipates hearing testimony from both of those individuals. That said, it is noted that the Consent Decree is a carefully crafted and meticulously detailed document which the court will not lightly disregard (i.e., Paragraphs 34, 37, 38 and 39), particularly in light of Mr. Faria's apparent acumen for, and experience in, the dairy business.

//
//
//
//
//

**ORDER RE MOTION FOR ORDER OF CONTEMPT-    6**

## IV. CONCLUSION

Plaintiff's motion is **GRANTED** to the extent it seeks partial summary judgment (Ct. Rec. 76). As detailed above, the court finds as a matter of law that Defendant violated the Consent Decree in certain respects.[2] Defendant's Motion To Strike (Ct. Rec. 92) is **DENIED** as moot considering the court has relied only on admissions of Defendant and other admissible evidence in making its findings.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this order and provide copies of it to counsel of record.

**DATED** this  7th  day of January, 2011.

                         s/Lonny R. Suko
                         LONNY R. SUKO
                 Chief United States District Judge

---

[2] Although Defendant does not directly challenge Plaintiff's standing to prosecute this action, it suggests there may be some issue in that regard. The Plaintiff's standing has been upheld in other cases (*CARE v. Bosma*, 65 F.Supp.2d 1129 (E.D. Wash. 1999)), and Plaintiff was the entity which obtained the Consent Decree in this matter and is a signatory to it. This court is satisfied that CARE remains a functioning legal entity capable of pursuing enforcement of the Consent Decree.

**ORDER RE MOTION
FOR ORDER OF CONTEMPT-     7**