UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| COMMUNITY ASSOCIATION FOR THE RESTORATION OF THE ENVIRONMENT, a Washington nonprofit corporation,<br><br>Plaintiff,<br><br>v.<br><br>NELSON FARIA DAIRY, INC.,<br><br>Defendant. | No. CV-04-3060-LRS<br><br>**ORDER DENYING MOTION FOR INDICATIVE RULING** |

**BEFORE THE COURT** is Defendant's Motion For Indicative Ruling On Nelson Faria Dairy's Rule 60(b) Motion To Vacate Judgments And Orders (ECF No. 392). The motion is heard without oral argument.

Because the court's Amended Judgment (ECF No. 245) is pending appeal before the Ninth Circuit Court of Appeals (ECF No. 258), Defendant's motion is pursuant to Fed. R. Civ. P. 62.1(a) which provides:

> If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may:
>
> (1) defer considering the motion;
>
> (2) deny the motion; or
>
> (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.

**ORDER DENYING MOTION FOR INDICATIVE RULING-    1**

Defendant contends that because of the administrative corporate dissolution of the Plaintiff, Community Association For The Restoration Of The Environment (CARE), on February 1, 2005, which became irrevocable on February 1, 2008 after CARE failed to seek reinstatement, CARE was divested of standing to enforce the Consent Decree in this matter and to seek a modification of the same. Accordingly, Defendant asserts the Order On Relief entered on January 12, 2012 (ECF No. 207) is void and must be vacated.

Prior to entry of its December 30, 2011 Memorandum Of Decision (ECF No. 201) and the Order On Relief, Defendant intimated there might be an issue regarding CARE's capacity to sue and/or its standing, but did not directly or formally assert that as a basis for why this court could not entertain contempt proceedings against Defendant.[1] As such, the court limited its discussion of CARE's standing to a mere footnote in its January 7, 2011 "Order Re Motion For Order Of Contempt" (Footnote 2 at p. 7, ECF No. 123):

> Although Defendant does not directly challenge Plaintiff's standing to prosecute this action, it suggests there may be some issue in that regard. The Plaintiff's standing has been upheld in other cases (*CARE v. Bosma*, 65 F.Supp.2d 1129 (E.D. Wash. 1999)), and Plaintiff was the entity which obtained the Consent Decree and is a signatory to it. This court is satisfied that CARE remains a functioning legal entity capable of pursuing enforcement of the Consent Decree.

Capacity to sue is distinct from standing to sue. "Capacity has been defined as a party's personal right to come into court, and should not be confused with

---

[1] See ECF No. 89 at pp. 2-3 and ECF No. 93 at pp. 19-20, both of which were filed on October 21, 2010. At that time, Defendant made the court aware of all of the facts which it now directly and formally asserts establish that CARE is without standing.

**ORDER DENYING MOTION FOR INDICATIVE RULING-    2**

whether a party has an enforceable right or interest or is the real party in interest." Wright, Miller and Kane, 6A *Fed. Prac. & Proc. Civ.* §1559 (2010) at p. 604. Capacity is not a jurisdictional matter. *Id*. at pp. 605-06. Under Fed. R. 17(b), the capacity of a corporation to sue or be sued is determined "by the law under which it was organized."

Whether a party has standing to sue in federal court is a question of federal law. *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1308 (Fed. Cir. 2003). Standing, like other bases of jurisdiction, must be present at the inception of the lawsuit and is an aspect of the case or controversy requirement which must be satisfied "at all stages of review." *Id*., citing and quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64, 67, 117 S.Ct. 1055 (1997). To demonstrate standing under Article III of the Constitution, a plaintiff must satisfy three elements. First, it must allege it has suffered an "'injury in fact'- an invasion of a legally protected interest." *Id*., quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130 (1992). Second, "there must be a causal connection between the injury and the conduct complained of." *Id.*, quoting *Lujan*, 504 U.S. at 560. Third, "it must be likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id*., quoting *Lujan*, 504 U.S. at 561.

There is no question that prior to its dissolution on February 1, 2005, CARE had both capacity under Washington law, and standing under federal law, to commence the captioned lawsuit. CARE was not dissolved when it commenced this lawsuit on June 7, 2004 against Defendant Faria Dairy's predecessors-in-interest, Smith Brothers Farms, Inc., and Smith Brothers Dairy. The Consent Decree, to which CARE and Smith Brothers agreed, was filed on May 23, 2006 (ECF No. 40). The Consent Decree was signed on behalf of CARE by Helen Reddout as "President." The fact CARE was administratively dissolved on February 1, 2005, and remained so on May 23, 2006, did not preclude CARE from

**ORDER DENYING MOTION
FOR INDICATIVE RULING-         3**

entering into the Consent Decree. CARE retained legal capacity and standing to enter into the Consent Decree.

RCW 24.03.300, pertaining to nonprofit corporations, provides in relevant part:

> The dissolution of a corporation . . . shall not take away or impair any remedy available to or against such corporation, its directors, officers, or members, for any right or claim existing, or any liability incurred, prior to such dissolution if action or proceeding thereon is commenced within two years after the date of such dissolution. Any such action or proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name. The members, directors and officers shall have power to take such corporate or other action as shall be appropriate to protect such remedy, right or claim.

Here, the Consent Decree was entered within two years after the date of the dissolution of CARE on February 1, 2005. The Consent Decree constitutes a "remedy" of the "right[s] or claim[s]" asserted in the lawsuit filed on June 7, 2004. The Consent Decree, however, is not just any "remedy." The language of RCW 24.03.300 contemplates a situation where a dissolved corporation commences a lawsuit- "action or proceeding"- in an effort to remedy a right or claim belonging to the corporation which existed prior to its dissolution. CARE's lawsuit, its "action or proceeding," was "commenced" prior to its dissolution. A consent decree is not something which is "commenced" like a lawsuit in an attempt to remedy a right or claim. Rather, a consent decree is a remedy which represents the resolution of an "action or proceeding." The May 23, 2006 Consent Decree constitutes a resolution of CARE's lawsuit commenced in June 2004. A consent decree is "an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees." *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 378, 112 S.Ct. 748 (1992). "A consent decree is a judgment, has the force of res judicata, and it may be enforced by judicial sanctions, including citations for

**ORDER DENYING MOTION
FOR INDICATIVE RULING-        4**

contempt." *SEC v. Randolph*, 736 F.2d 525, 528 (9th Cir. 1984).  Although it represents a contract between the parties, a consent decree's enforcement is wholly dependent upon a judicial act.

      Defendant notes that CARE did not seek to enforce the decree until May 2010 when it filed its Motion For Order To Show Cause (ECF No. 55), more than two years after its dissolution, and also after the time had expired to be reinstated following its dissolution.  RCW 24.03.302 provides that a corporation may be reinstated within a period of three years following its dissolution.  For CARE, this three year period expired on February 1, 2008 (three years from February 1, 2005).[2]  Because of the nature of the Consent Decree as tantamount to a judgment, this court deems it inconsequential that the incarnation of CARE which signed the Consent Decree was irrevocably administratively dissolved on February 1, 2008.  A corporate pre-dissolution "right or claim" that has been reduced to judgment is distinguishable from a pre-dissolution "right or claim" that has never been asserted, or at least not asserted within the two year survival period provided by RCW 24.03.300.[3]  As noted, CARE obtained its judgment, the Consent Decree,

---

    [2] On May 9, 2009, CARE re-filed for corporate status.  Its corporate status was administratively dissolved in September 2010, mistakenly so according to CARE which says it intends to seek reinstatement.

    [3] Other courts have made a similar distinction based on applicable state law. *Sharif v. International Development Group Co.*, 399 F.3d 857 (7th Cir. 2005) (applying Illinois law); *Canadian Ace Brewing Co. v. Joseph Schlitz Brewing Co.*, 629 F.2d 1183 (7th Cir. 1980) (applying Illinois law); and *Domino Media, Inc. v.*

**ORDER DENYING MOTION FOR INDICATIVE RULING-    5**

within this two year survival period. Under state law, CARE had the capacity to bring suit as a non-profit corporation in June 2004, which it did so against the Defendant. That capacity was not altered by CARE's dissolution on February 1, 2005. After the Consent Decree was obtained in May 2006, the question was no longer CARE's capacity to sue, but its ability to enforce a judgment following resolution of a suit. The proceedings to enforce the Consent Decree are part of the original suit timely commenced prior to the dissolution of CARE which took place on February 1, 2005. The contempt proceedings commenced in May 2010 were neither new or distinct. They were a continuation of the original suit commenced prior to CARE's dissolution.

RCW 24.03.300 addresses the post-dissolution survival of rights or claims existing prior to dissolution. It does not address enforceability of a judgment obtained following dissolution, that being a judgment on a right or claim which existed prior to dissolution. The current enforcement proceedings do not arise from "post-dissolution rights and claims," as asserted by Defendant. They arise from a post-dissolution judgment on rights and claims asserted prior to dissolution. The 2006 Consent Decree remedied a pre-dissolution right or claim The enforcement of this decree did not require CARE to commence a new action and therefore, does not raise an issue regarding its capacity to sue. There is no question about CARE's capacity to sue prior to February 1, 2005 when it commenced the captioned lawsuit. There is no question its capacity to maintain the lawsuit, by virtue of RCW 24.03.300, continued through May 23, 2006 when the Consent Decree was entered.[4] After May 23, 2006, the only remaining

---

*Kramis*, 9 F.Supp.2d 374 (S.D. N.Y. 1998)(applying Colorado law).

[4] It may be that the mere fact the captioned lawsuit was commenced prior to February 1, 2005 (prior to dissolution) was sufficient for CARE to maintain

**ORDER DENYING MOTION FOR INDICATIVE RULING-      6**

question was standing to enforce the decree. Capacity to sue and maintain suit was no longer an issue.

The court concludes that CARE, whether as a dissolved corporation or as an unincorporated association, retained standing to enforce the Consent Decree on behalf of its members. Associational standing exists where at least one member of the association has standing in his or her own right to present the claim, or as in this case, enforce the judgment on the claim obtained by the association; the interests sought to be protected are germane to the association's purpose; and neither the claim asserted nor the relief requested requires that the members participate individually in the suit. *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434 (1977). At least one member of CARE has standing in his or her own right to enforce the Consent Decree because he or she has suffered an injury in fact that is fairly traceable to Defendant's activity and the injuries are likely to be redressed by enforcement of the Consent Decree; the interests sought to be protected by enforcement of the Consent Decree are clearly germane to CARE's purpose (preserving and protecting the environment); and enforcement of the Consent Decree does not require the individual participation of the members because the claims giving rise to the Consent Decree do not require participation of any particular individual member. The citizen suit provisions of the Clean Water Act (CWA), the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), and the Emergency Planning and Community Right To Know Act (EPCRA), allow "any person" to bring an enforcement action. 33 U.S.C. §1365(a); 42 U.S.C. §9659(a); and 42 U.S.C.

---

capacity to sue through the date of judgment, whenever that might have been. As noted, however, the Consent Decree was clearly obtained within the two year survival period provided by RCW 24.03.300.

**ORDER DENYING MOTION**
**FOR INDICATIVE RULING-       7**

§11046(a).[5]

The standing requirements for CARE to enforce the Consent Decree are the same whether it is an undissolved non-profit corporation or an unincorporated association. CARE is the same entity regardless of its current corporate status. Therefore, the court does not view CARE, the unincorporated association, as a "successor" to CARE, the non-profit corporation. In any event, if it were a "successor," the Consent Decree is "binding upon the Parties to this action, and the successors and assigns of the Parties." (ECF No. 40 at p. 3).

Because CARE had capacity and standing to bring and maintain suit on its claims at all time through entry of the Consent Decree, and because it thereafter retained standing to enforce the Consent Decree, notwithstanding its dissolution as a non-profit corporation, the Order On Relief is not void and there is no basis for awarding Fed. R. Civ. P. 60(b)(4) relief to Defendant. It follows that there is no basis for awarding Rule 60(b)(3) relief to Defendant since the Consent Decree and the subsequent Order On Relief were not obtained on the basis of any fraud, misrepresentation or misconduct by CARE. As pointed out in Footnote 1, *supra*, in October 2010, well before this court found Defendant in contempt and entered the Order On Relief, Defendant made the court aware of all facts pertinent to CARE's corporate status, including that CARE had been administratively dissolved on February 1, 2005, and that "[a] new non-profit corporation named 'Community Association for Restoration of the Environment' was formed on May 9, 2009, but that corporation's registration expired on May 31, 2010, and it was administratively dissolved on September 1, 2010." (ECF No.

---

[5] The CWA refers to "any citizen," but "citizen" is defined as "a person or persons having an interest which is or may be adversely affected." 33 U.S.C. §1365(g).

**ORDER DENYING MOTION
FOR INDICATIVE RULING-    8**

93 at Paragraph 30). CARE has never denied any of this. Defendant professes to be "shocked" that reinstatement of CARE to corporate status has not occurred as counsel for CARE indicated it would (Footnote 7 at p. 18 of ECF No. 423), but Defendant's own argument is that reinstatement of the CARE corporate entity dissolved in September 2010 is inconsequential, and that what is consequential is the failure to reinstate the prior CARE corporate entity dissolved in February 2005.

Defendant's wholly unsubstantiated allegations of fraud on the part of counsel for CARE and on the part of Ms. Reddout give the court serious pause as to whether Defendant's motion is presented for an improper purpose, "such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). Adding to the court's pause is that all of the facts which form the basis of the current motion were previously available to Defendant at least by October 2010. On this occasion, the court will refrain from requiring the Defendant and/or its counsel to show cause why the motion does not constitute a violation of Rule 11(b)(1), but the discussion contained herein should serve as notice the court will carefully scrutinize all future motions for compliance with Rule 11(b).

Defendant's "Rule 62.1 Motion For Indicative Ruling On Nelson Faria Dairy's Rule 60(b) Motion To Vacate Judgments And Orders" is **DENIED**. For the reasons set forth herein, this court is satisfied that CARE remains a functioning legal entity capable of pursuing enforcement of the Consent Decree, as now modified by the Order On Relief. Defendant's Motion For Leave To File Over-length Reply Memorandum (ECF No. 424) is **GRANTED**.

//
//
//
//

**ORDER DENYING MOTION
FOR INDICATIVE RULING-    9**

**IT IS SO ORDERED.** The District Court Executive is directed to enter this order and provide copies of it to counsel of record.

**DATED** this  27th  day of July, 2012.

                *s/ Lonny R. Suko*
                LONNY R. SUKO
                United States District Judge

**ORDER DENYING MOTION FOR INDICATIVE RULING-**     10