Charles M. Tebbutt, *Pro Hac Vice*
Daniel C. Snyder, *Pro Hac Vice*
Law Offices of Charles M. Tebbutt, P.C.
941 Lawrence St.
Eugene, OR 97401
Telephone: (541) 344-3505
Facsimile: (541) 344-3516
charlie.tebbuttlaw@gmail.com

Andrea Rodgers Harris, WSBA #38683
Mattson Rodgers, PLLC
149 NE 52nd Street
Seattle, WA 98105
Telephone: (206) 696-2851
akrodgersharris@yahoo.com

Local Counsel for Plaintiff


Jeremy A. Fielding, *Pro Hac Vice*
Nicholas J. Chapleau, *Pro Hac Vice*
Lynn Tillotson Pinker & Cox, LLP
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839

Counsel for Defendant

Honorable Lonny R. Suko

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON
### AT SPOKANE

| | |
|---|---|
| COMMUNITY ASSOCIATION FOR RESTORATION OF THE ENVIRONMENT, a Washington nonprofit corporation,<br><br>Plaintiff,<br><br>v.<br><br>SMITH BROTHERS DAIRY, since purchased by NELSON FARIA DAIRY, LLC.<br><br>Defendants. | No. 04-cv-3060-LRS<br><br>**2013 CONSENT DECREE** |

WHEREAS the Court entered on January 12, 2012 an Order on Relief and an amended Order on Relief on March 9, 2012;

WHEREAS Faria has appealed the Order on Relief to the United States Ninth Circuit Court of Appeals;

WHEREAS after consultation with their respective counsel, CARE and Faria (collectively, the "Parties") wish to settle this case to avoid the risks of litigation and appeal and to resolve the controversy between them;

WHEREAS without any admission by Faria of the facts or violations alleged by CARE in its original Complaint or in its Motion for Contempt, the Parties have agreed to settle their dispute by entering into this 2013 Consent Decree.

NOW, THEREFORE, it is hereby ORDERED, ADJUDGED, AND DECREED as follows:

## General Provisions

1.    This Court has jurisdiction over the Parties and subject matter of this action pursuant to 33 U.S.C. § 1365(a), 42 U.S.C. § 9659(c), 42 U.S.C. § 11046(c), 28 U.S.C § 1331, and the original Consent Decree. Venue is proper in this Court pursuant to 33 U.S.C. § 1365(c), 42 U.S.C. § 9659(b), 42 U.S.C. § 11046(b), and 28 U.S.C. § 1391(b) and § 1395(a), and the original Consent Decree. The Court shall retain jurisdiction to enforce the terms of this 2013 Consent Decree and to

resolve any disputes arising hereunder for the duration of this 2013 Consent Decree.

2.     This 2013 Consent Decree supersedes all previous orders and judgments entered by this Court, including (without limitation) the original Consent Decree (ECF No. 40), Order on Relief (ECF No. 207), Amended Order on Relief (ECF No. 243) and Order re CARE's Application for Attorney and Expert Witness Fees and Costs (ECF Nos. 290 and 291) (collectively, the "Prior Orders"). This 2013 Consent Decree also supersedes and renders moot all unresolved or carried motions currently pending before this Court, including without limitation, CARE's Petition for Judicial Resolution Pursuant to Paragraphs 28(a) (ECF No. 276).  This Consent Decree does not vacate the Court's Memorandum of Decision of December 31 (ECF No. 201) or the Order Re Motion for Order of Contempt (ECF No. 123) though it does supersede all remedial relief granted pursuant to those decisions and orders. Faria has appealed these orders, but has agreed to withdraw its appeal without any admission of fault or wrongdoing and in the interests of ending the current dispute.

3.     This 2013 Consent Decree shall apply to and be binding upon only the Parties, and upon their successors and assigns.  Both parties shall be required to notify one another in writing within thirty (30) calendar days of any successor in

interest or assignment of any rights under this 2013 Consent Decree, providing the relevant documents evidencing that event, i.e., assignment documents. The parties agree that either party's failure to timely comply with this assignment notification requirement voids that party's ability and standing (and/or the ability and standing of any claimed assignee or successor-in-interest) to enforce this 2013 Consent Decree or to otherwise obtain any relief or remedies pursuant to it, but does not otherwise vitiate any party's responsibility to comply with the terms of this Decree.

4.    This 2013 Consent Decree shall remain fully operative and enforceable by either Party until January 12, 2015. On that date, either Party's authority and standing to enforce the terms of this 2013 Consent Decree shall irrevocably expire. However, (except as otherwise set forth herein) any material structural or operational modifications implemented by Faria at the Dairy pursuant to any requirement or provision of this 2013 Consent Decree shall remain in place until such time as Faria or any subsequent owner or operator of the Dairy has reasonable cause to materially modify or replace any such structural or operational modification. Faria, or any subsequent owner or operator of the Dairy, shall give written notice to CARE at least 30 days in advance of such material modification or replacement. The notice must expressly state the justification(s) for the modification or replacement. Prior to making the modification or replacement,

Faria, or any subsequent owner or operator of the Dairy, shall obtain an approved and executed Nutrient Management Plan for the Dairy which identifies the material modification or replacement, describes the justification(s) for the change, and evaluates the efficacy of the change against the structural or operational modification(s) imposed by this 2013 Consent Decree.    Any    sale    and/or lease/transfer and/or other change of possession of the Dairy or its property to another entity which at any time operates on the property a concentrated animal feeding operation or "CAFO" shall be subject to these terms and all other terms of this 2013 Consent Decree. Faria shall provide a copy of this 2013 Consent Decree as part of any sale, lease, offer to sell, or any other transfer of Faria's possessory interest in the Dairy and its property, whether in whole or in part.

5.    The Dairy is presently located at 11792 Road 12.5 SW, Royal City, Washington.

6.    The Dairy meets the federal and state law definitions of a large concentrated animal feeding operation or "CAFO."

7.    In operating the Dairy, Faria shall abide by this 2013 Consent Decree, the Federal Water Pollution Control Act ("Clean Water Act"), CERCLA, EPCRA, the Washington General NPDES Permit for CAFOs, the Washington Dairy Nutrient Management Act, RCW 90.64, *et seq.*, and the Dairy's Nutrient

Management Plan. Should any of the terms of this 2013 Consent Decree be stricter than the laws above mentioned, the terms of this 2013 Consent Decree shall be applied.

8.      This 2013 Consent Decree may not be modified except by explicit written amendment agreed to by the Parties and approved by the Court.

9.      This 2013 Consent Decree constitutes a full, final and complete settlement of all claims, rights, demands, and causes of action of any kind for alleged past violations of any kind that CARE and/or its officers, directors or affiliates (the "CARE Parties") asserted or could have asserted (the "Released Claims") against Faria, Nelson Faria, Jerry Allred, Randy Allred, Wiley Allred, Derek Allred, the J&C Allred Children's Trust, Valley Vista Farms, Allred Brothers, LLC and any of these person or entities' respective directors, officers, employees, members, shareholders, owners, affiliates, operators, managers, agents or control persons ("Faria Parties"). The CARE Parties hereby release all such Released Claims and covenant not to sue the Faria Parties in connection with them. The Released Claims specifically include (without limitation) all claims, whether known or unknown, and whether asserted or unasserted, and specifically include, but are not limited to, claims for civil penalties, attorneys' fees and costs, expert witness fees, injunctive relief, and damages for nuisance, trespass or other

common-law claims arising out of or related to any alleged actions or violations occurring prior to the date of the execution of this 2013 Consent Decree. This release and covenant not to sue specifically includes (without limitation) any alleged violations of the RCRA, CWA, EPCRA or CERCLA. It also includes any alleged violations of the original Consent Decree, the January 12, 2012 Order on Relief, or any other orders entered by the Court occurring on or prior to the date of entry of this 2013 Consent Decree. This settlement, release and covenant not to sue do not release Faria from compliance with this 2013 Consent Decree. This settlement, release and covenant not to sue shall not in any way limit CARE's ability to enforce the terms of this 2013 Consent Decree as to any future violations occurring after the date of entry.

11.   For the purposes of this 2013 Consent Decree, the term "manure management" includes, but is not limited to, manure in barns, pens, compost operations, holding facilities, pits, lagoons, storage facilities, piles, and liquid or solid manure that is applied to land.

### National Pollutant Discharge Elimination System Permit

12.   Faria shall comply with the terms of the current CAFO General Permit, which has been administratively extended, except those provisions of the CAFO Permit which require compliance with a Nutrient Management Plan (NMP)

approved by Ecology. Until Faria obtains an Ecology-approved NMP, Faria shall comply with its current NMP. When Ecology issues Faria the current CAFO General Permit, Faria shall comply with the terms of that Permit until such time as new CAFO Permit is issued.

13.     Faria shall apply for and obtain any new General CAFO Permit that is released during the term of this Consent Decree.

14.     CARE retains the ability to challenge the provisions and requirements of any General CAFO Permit promulgated by any state or federal agency.

### Site Inspections and Meeting

15.     CARE shall have the right to have four representatives, which may include attorneys or expert consultants, visit and inspect the Dairy up to two (2) times per year, subject to at least 48-hour prior written notice given to Faria on a week day. If a lawyer representing CARE will be attending the inspection, CARE shall provide at least three business days' written notice to Faria. The inspections will be conducted between the hours of 8:00 a.m. and 5:00 p.m., and the CARE representatives will be accompanied at all times by Faria personnel.

16.     During an inspection, CARE representatives may view records associated with any obligations set forth in this 2013 Consent Decree, with the exception of records subject to the attorney-client, work product, or consulting

expert privilege. Under no circumstances may the representatives remove records from the Dairy. The CARE representatives may designate records that are not subject to the attorney-client, work product, and/or consulting expert privilege for Faria to copy and provide to CARE at no cost to CARE.

17.    CARE shall inform Faria within thirty (30) calendar days of an inspection undertaken pursuant to paragraph 15 of any violations of any requirement of this 2013 Consent Decree or any conditions which may result in a violation of any requirement of this 2013 Consent Decree. CARE's failure to notify Faria that a specific condition constituted, or may constitute, a violation of this 2013 Consent Decree shall be deemed a waiver of any claim that such condition was in fact a violation, except for latent conditions that a prudent person, in exercising reasonable care and diligence, would not have observed. CARE shall inform Faria within five (5) business days of their visit of any condition that CARE believes could cause or lead to an imminent surface discharge from the Dairy or the Dairy's manure management and application practices in violation of any legally applicable requirement, including any requirement of this 2013 Consent Decree.

18.     The Parties shall meet within one (1) year after the entry of this 2013 Consent Decree at a mutually convenient location to discuss the status of the 2013 Consent Decree's implementation.

19.     The site inspections and meetings identified in ¶¶ 15-17 are separate and independent from any other site inspection right CARE is granted in this 2013 Consent Decree.  However, any site inspections under this 2013 Consent Decree may be combined upon written consent of the Parties.

### Record Keeping

20.     Faria agrees to maintain the following records on-site at the Dairy and to provide copies, at no charge, to CARE annually (upon CARE's prior written request) by no later than January 31 of the year following the year in which the information is collected, unless otherwise specified in this 2013 Consent Decree:

a.     Lagoon water quality monitoring data

b.     Off-Site Farmer Certifications.

21.     Nothing in ¶ 20 shall relieve Faria from creating, maintaining, and providing to CARE other specific records where such records are specifically required to be created, maintained, and provided by portions of this 2013 Consent Decree.

### Lagoon Draw Down & Liner Inspection

22.    At least once per year, Faria shall use its best efforts to pump down the primary and secondary lagoons such that no more than three feet of liquid and/or solid material remain in the bottom of each lagoon.  CARE acknowledges that Faria's ability to pump down the lagoons to this level is dependent upon events and conditions outside Faria's control, including weather conditions that do not permit application, equipment break-down, and/or other events and conditions covered by the force majeure provisions of Paragraph 51.  To the extent such events or conditions prevent Faria from drawing down the lagoons below this level, such failure to perform is excused, provided Faria complies with the force majeure notice provisions in Paragraph 51.  During this annual draw down, Faria shall use reasonable efforts to rinse the side wall areas of the lagoon liner where tracks have been laid for agitators to be lowered into the lagoons such that these areas may be visually inspected for tears and or breaks in seams.  Faria shall then inspect the lagoon liners for tears and other defects. Faria shall repair all tears and defects that are discovered during the inspection.

    a.    Faria shall document the results of inspections and repairs done in accordance with the inspection protocol and shall provide such documentation to CARE within thirty (30) calendar days of completion of inspection and repair.

b.    Faria shall notify CARE at least fourteen (14) calendar days in advance of the anticipated date of the annual inspection of the lagoons, and will notify CARE of the date of the annual inspection within 48 hours of the actual inspection time and date and any subsequently scheduled repair appointments. CARE shall be permitted to be present during inspections and repairs if CARE provides Faria with 24-hour written notice of its intent to be present during inspection and repairs.  If CARE intends to have one its lawyers present for the inspection or repair, CARE shall provide Faria with at least five business days' notice.

### Nutrient Management Plan Compliance

23.    Faria shall comply with the handling and storage of manure and liquid wastes in accordance with its approved Nutrient Management Plan (hereinafter "NMP") as it may be amended from time to time.

### Manure Management System Updates

24.    Within 150 days of the date that this 2013 Consent Decree is entered by the Court, Faria shall install a centrifuge manure separator at the Dairy.  CARE understands that Faria meeting this deadline depends upon Faria timely receiving shipment of centrifuge parts and installation occurring without any unanticipated

complications.  In the event Faria learns it will not be able to meet this 150 day installation deadline, it will provide CARE with notice of this fact pursuant to the force majeure notice provisions of Paragraph 51.  This notice shall provide a new estimated installation completion date and state the reasons for the delay.   The specifications for the centrifuge are attached hereto as Attachment A.

### Lagoon Water Quality Monitoring

28.    Faria shall monitor the water quality of the Dairy's treatment and storage lagoons by conducting water-quality sampling on a semi-annual basis in March and September.

29.    A composite grab sample will be taken: (1) of the influent to the treatment lagoon; and (2) separately from the effluent from the storage lagoon. "Composite grab sample" shall mean a sample that consists of a mixture of samples taken from different areas of the influent and the effluent.

30.    The samples shall be analyzed by an independent laboratory certified by the State of Washington for wastewater analysis. The samples shall be analyzed for the following parameters:

    a. Ammonia;
    b. Total Phosphorus;
    c. Dissolved Sulfides;
    d. pH;
    e. Temperature;
    f. Nitrate;

g. BOD (total and soluble);

h. Total Suspended Solids (TSS);

i. Dissolved Oxygen (DO); and

j. Volatile Suspended Solids (VSS).

## **Transfer of Greenwater**

31.     Faria shall require each farmer who receives or will receive the Dairy's greenwater from the irrigation pipeline(s) to provide Faria with a written certification for each field to be so irrigated, as a condition to receiving the greenwater for that field (the "Off-Site Farmer Certifications"). For the purposes of this paragraph, a "farmer" or "off-site farmer" is a person who grows crops on property not directly owned, leased, or operated by Faria, and "year" shall mean calendar year. The certification shall be in the form included as Attachment B to this 2013 Consent Decree.

32.     Faria may only deliver greenwater from the irrigation pipeline to any field for which Faria has received the required Off-Site Farmer Certification.  In the event Faria acquires actual knowledge that a farmer has violated a certification requirement for a particular field, Faria shall immediately terminate delivery of greenwater, in accordance with the following procedures:

a.      If a farmer violated a certification requirement in the preceding year and violates the same requirement in the current year on the same field, Faria shall discontinue delivery of greenwater to that field.

Deliveries of greenwater may be restored to that field only if Faria receives written confirmation from a professional engineer, licensed in the State of Washington with an environmental discipline (a "Licensed Engineer"), that the farmer has cured the violation and the violation is not likely to reoccur. Faria shall pay the Professional Engineer's fees and costs if requested by the farmer.

b.    If a farmer violates a certification requirement during the current year with no prior violation of the same requirement on the same field for the prior year, Faria shall discontinue delivery of greenwater to that field. Deliveries of green water may be restored to that field only if the farmer confirms to Faria that the violation has been cured and is not likely to reoccur.

c.    If a farmer commits a second violation of the same certification requirement on the same field during any single calendar year, Faria shall discontinue delivery of greenwater to that field. Deliveries of greenwater may be restored to that field during the current year only if Faria receives written confirmation from a Licensed Engineer that the violation has been cured and is not likely to reoccur.

d.    If a farmer commits a third violation of a certification requirement on

the same field during any single calendar year, regardless of whether the certification requirements are related, Faria shall discontinue delivery of greenwater to that field for a minimum of twelve (12) months. Deliveries of greenwater may thereafter be restored to that field only if Faria receives written confirmation from a Licensed Engineer that the violations have been cured and are not likely to reoccur.

e.    If a farmer commits three or more violations of any certification requirement during the current year, regardless of the field(s) upon which the violations occurred and regardless of whether the certification requirements are related, Faria shall discontinue delivery of greenwater to that farmer for the remaining term of the Consent Decree.

## Solid and Liquid Manure Field Application

33.    Faria shall monitor and document its application of solid and liquid manure in accordance with its NMP so as not to overload its Fields with nutrients. As used herein, "Fields" or "Field" includes **only** those fields directly owned by Faria.    Accordingly, none of the provisions, obligations or monitoring and

reporting requirements set forth in Paragraphs 34-38 below shall apply to any fields owned by any person or entity other than those owned directly by Faria.

34.    Faria shall conduct sampling twice annually on Fields receiving solid and liquid manure before each application season, generally in March and October for the duration of this 2013 Consent Decree.

35.    Within thirty (30) calendar days from the receipt of analytical data collected from the soil sampling, Faria shall take the following actions for Fields receiving solid and liquid manure before the application of solid or liquid manure to such Fields:

   a.    Calculate the appropriate manure application rates and quantities for available Fields using the National Resource Conservation Service ("NRCS") Dairy Waste Collection Worksheet based on the data collected from the soil sampling plan.

   b.    Identify Fields receiving manure, by Block, Unit and Field number, and present the boundaries on a topographic map showing farm and associated Fields.

   c.    Describe overland surface water flow across the farm and Fields, including a description of the surface water body receiving overland flow (if any).

d.  Identify known tile drains on Fields receiving manure or liquid waste.

e.  Locate and show on maps irrigation wells and drinking water within one mile of the production or land application areas.

f.  Characterize the dominant soil series, associated key nutrient and infiltration-related characteristics, and cropping based on the soil survey.

g.  Evaluate leaching index to evaluate the potential for groundwater contamination for soluble nutrients.

h.  Create a table describing the applicable state/NRCS setback criteria and distance for identified sensitive areas.

i.  Describe the soils in both narrative and tabular form.

36.  Faria shall submit the information identified in ¶ 35 associated and paired with each Field, which shall be identified by total acreage block, unit and Field number, to CARE at least ten (10) calendar days before applying liquid or solid manure to those Fields, and shall provide the following information in written format:

a.  A section that describes the amount of solid or liquid manure that may be applied to the Field so as to not overload the Field with

nutrients based on NRCS calculations per crop. Application inspection forms to document the following during application:

i.      Inspector's name;

ii.     Application date;

iii.    Field designation;

iv.     Photographs and written description of physical Field conditions at the start of application;

v.      Weather conditions at the start of application;

vi.     Application method;

vii.    Application start time;

viii.   Application rate;

ix.     Application completion time.

b.    CARE shall have ten (10) calendar days to review and comment on Faria's proposed protocols. Any dispute shall be subject to dispute resolution.

c.    Faria shall not apply solid or liquid manure to any Field when the soil phosphorus or nitrate concentrations in the upper 10-12 inches of soil exceed the optimum concentration for crop growth based on NRCS nutrient criteria for the relevant crop. If levels of nitrate or

phosphorous exceed optimum growth numbers at either the 2 or 4 foot level, then no manure may be added. There shall be no manure applications where Ammonium N and Nitrate N combined are at or exceed crop needs. In addition, there shall be no application of solid or liquid manure if: 1) Nitrate results, as expressed by concentration in the soil solution based on the soil moisture content, exceed 10 mg/liter Nitrate N at the 4 foot depth; or 2) if the top one foot phosphorus levels exceed 30 mg/l.

37.    Faria shall maintain the inspection records on-site and submit the records to CARE by May 15th for the period from November 1st to April 30th, and by November 15th for the period from May 1st to October 30th, for each year for the duration of this 2013 Consent Decree.

38.    Faria shall monitor and maintain documentation of the application of solid and liquid wastes to off-site Fields authorized under Off-Site Farmer Certifications by maintaining off-site manure management forms that include the following information:

     i.     Farm receiving the liquid and/or solid manure;

     ii.    Transfer method descriptions (e.g., pipeline, truck, etc);

     iii.    Map identifying the location and acreage of crop and forage

fields;

iv.    A description of the application method(s) and the rate of application (if known).

For applications to Fields that occur more than 10 calendar days apart, Faria shall include sample analyses of each manure application event for total Nitrogen, Ammonium N, Nitrate plus Nitrite N, Total  Phosphorus, and Total solids.

## Operations and Maintenance Manual

39.    Faria has prepared an operations and maintenance manual (hereinafter "O&M"), which has been reviewed and approved by CARE.   Faria shall operate the lagoon system in accordance with the O&M, maintain records of all operation and maintenance, and provide such records to CARE annually (upon CARE's prior written request).

## Employee Training Requirements

40.    Faria has developed a bi-lingual training program for new employees and an annual refresher training program for current employees. The program applies only to those employees who are responsible for manure and wastewater management, including lagoon sampling/level measurements, equipment operations and calibration, manure land-application, manure composting, and NMP

maintenance and revision requirements.  CARE has reviewed and approved this training program.

41.    Faria has conducted training for all employees using this approved training program during 2012.   Upon request by CARE, training documentation for 2013 and 2014 shall be submitted to CARE.

### EPCRA Reporting

42.    Faria shall comply with the U.S. Environment Protection Agency's ("EPA") regulations governing the release of extremely hazardous substances or CERCLA hazardous substances under 40 C.F.R. Part 355, EPCRA's reporting rule. Faria shall also comply with the emergency release and notification requirements of EPCRA.

43.    For the duration of this 2013 Consent Decree, Faria shall provide to CARE copies of the notifications, documents, or other evidence of reporting (including evidence of phone calls) Faria provided to the state emergency response commission and any appropriate local emergency planning commission under the EPCRA reporting rule or any other reporting requirement. The copies shall be provided to CARE within thirty (30) calendar days of Faria's reporting.

### Herd Size

44.    Faria shall not expand the herd size beyond 10,440 Animal Units for the duration of this 2013 Consent Decree.

### **Groundwater Monitoring**

45.    Faria has installed and shall maintain through the term of this 2013 Consent Decree the two environmental monitoring wells at each of the following sites:

i.    Downgradient of the treatment lagoons;

ii.    Downgradient of the dry feed lots;

iii.    A site located north of and between the two monitoring sites downgradient of the feed lots but just south of the canal where the "North Field" pond was present.

46.    Faria shall continue to have Associated Earth Sciences (or another qualified entity) sample these groundwater wells every two months (six times per year).  Following the expiration of this 2013 Consent Decree on January 12, 2015, Faria shall have no obligation to maintain these wells and its obligation to perform any further sampling shall immediately terminate.  Accordingly, after January 12, 2015, Faria may remove these wells at its sole and absolute discretion without having to comply with any of the provisions of Paragraph 4 herein.  Analyses must

be performed at a lab certified by the State of Washington using EPA approved methods with the minimum detection limits listed below.

| Parameter | Practical Quantification Limit |
|---|---|
| Nitrate Plus Nitrite Nitrogen | 0.1 mg/l |
| Ammonium Nitrogen | 0.1 mg/l |
| Chloride | 0.1 mg/l |
| Sodium | 0.1 mg/l |
| Potassium | 0.1 mg/l |
| Calcium | 0.1 mg/l |
| Magnesium | 0.1 mg/l |
| Specific Conductance | 10 umhos/cm |
| Total Phosphorus | 0.01 mg/l |
| pH | .1 pH unit |
| Alkalinity | 1 mg/l |
| Sulfate | 1 mg/l |
| e-coli | <2 cfu/100ml |

### Legal Expenses & Costs

47.    In the interests of settling the present dispute and without any admission of wrong-doing or liability of any kind, Faria has agreed to pay CARE a sum of money set forth in a separate agreement intended to compensate for CARE certain reasonable fees and costs incurred in this case through the date of the entry of this Order.   Going forward, the parties shall bear their own fees and costs incurred in connection with fulfilling their duties and/or implementing or enforcing the terms of this 2013 Consent Decree.  Accordingly, the Parties agree that neither will seek nor request from the Court any award of fees or costs in connection with

any motion or proceedings related to the implementation or enforcement of this Decree.

## Dispute Resolution

48.    The parties agree that any disputes as to the meaning, application or enforcement of this 2013 Consent Decree shall be resolved in accordance with the following subsection a, which shall be the exclusive mechanism to resolve such disputes.

a.    Any dispute that arises with respect to the meaning, application or enforcement of this 2013 Consent Decree shall initially be subject to a period of informal negotiations, which period shall not extend beyond thirty (30) days from the date the dispute arises, unless the parties otherwise mutually agree in writing to an extension of the period. A dispute shall be considered to have arisen on the date a party receives (either by email or other means) written notification from the other that a dispute has arisen, which notice shall specifically reference this Section of the 2013 Consent Decree. In the event that the parties are unable to resolve the dispute informally, the Party invoking the dispute resolution process shall serve a written statement of its position upon the other party. That statement shall be considered final and binding unless, within thirty (30) days after receipt of the statement, the other party shall file with the Court and serve upon counsel for the

other party a petition for judicial resolution of the dispute. The petition shall refer to this Section of the 2013 Consent Decree and shall set forth the nature of the dispute, the efforts made by the parties to resolve the dispute, the evidence upon which the party's position is based (if any), and a proposal for its resolution.

b.    Within twenty-one (21) days following receipt of a petition the other party may file a responsive memorandum, setting forth that party's position, the evidence upon which the party's position is based (if any), and a proposal for its resolution. The party that initially files the petition may, but shall not be required to, file a reply memorandum within fourteen (14) days after receipt of the responsive memorandum.   Each party shall bear the burden of proving any disputed fact upon which it bases its position by a preponderance of the evidence. The filing of a petition for dispute resolution shall not relieve either party of its obligations under this 2013 Consent Decree.

## Force Majeure

49.    Faria's obligation to comply with the requirements of this 2013 Consent Decree shall be deferred, modified, or excused to the extent caused by a force majeure. Force majeure, for purposes of this 2013 Consent Decree, is defined as any event arising from causes beyond the control of Faria, that delays or prevents the performance of any obligation required by this 2013 Consent Decree,

despite Faria's best efforts to comply with the Order. Force majeure includes, but is not limited to:

a.   Delays caused by government agencies, including but not limited to Grant County and the Department of Ecology, in reviewing, approving or modifying documents submitted by Faria;

b.   Delays caused by third parties that prevent the Dairy from securing necessary supplies, materials, or products;

c.   Delays caused by the failure of CARE or its consultants in fulfilling its obligations under this Order;

d.   Delays necessitated by circumstances that pose an imminent threat to public health, safety or the environment;

e.   The intentional acts or omissions of third parties that cause injury or damage to the Dairy facility or its operations;

f.   Government acts, legislation or regulations affecting the CAFO industry that affirmatively prohibit any action required by this Order;

g.   Acts of God, including fire, flood, weather conditions, equipment failure, and/or other unavoidable casualties.

50.   Delays caused by any force majeure acts shall be documented by Faria and an explanation shall be provided in writing to CARE's representatives

within ten (10) business days of the condition giving rise to the act alleged to be force majeure. Failure to provide the above mentioned documentation and notification to CARE shall be deemed a waiver of this provision.

## **Miscellaneous**

51.    All notifications and all records required to be provided, including all documents required to be provided by Faria to CARE, shall be provided by electronic means unless otherwise not available.

52.    CARE shall act as a single legal entity with respect to all notices, review and commenting, reporting requirements, decisions, and other actions taken under this 2013 Consent Decree. No individual member of CARE is authorized to modify or waive any requirement or provision of this 2013 Consent Decree. No individual member of CARE is authorized to accept any notice under this 2013 Consent Decree on behalf of CARE.   Notwithstanding the foregoing, CARE appoints Gary Christensen as its agent to act on behalf of CARE in its dealings with Faria.   CARE may appoint a new designated agent by providing Faria with written notice of that designation, which notice shall contain that person's name and contact information.   Such agent shall be a resident of Grant County, Washington.

53.    Faria shall not be answerable to any individual CARE member in complying with this 2013 Consent Decree.  Further, the Parties agree that this 2013 Consent Decree imposes obligations only on the Parties themselves and that no other entity or persons other than the Parties to this action shall have power to enforce the terms of this 2013 Consent Decree (including any of the individual members of CARE), except for the Parties' respective successors-in-interest and/or assignees, so long as timely notification is provided in compliance with Paragraph 3.

54.    Each party acknowledges and represents that they have relied on the legal advice of their attorney, who is the attorney of their own choice and that the terms of this 2013 Consent Decree have been completely read and explained to them by their attorney and the terms are fully understood and voluntarily accepted.

55.    If the Court should decline to approve this 2013 Consent Decree in the form presented, the Parties agree to negotiate in good faith in an attempt to cure any objections raised by the Court to the entry of this 2013 Consent Decree in a manner most consistent with the terms of the Parties' agreement.

56.    The Parties agree this 2013 Consent Decree constitutes the final, complete, and exclusive agreement and understanding of the Parties with respect to the subject matter of this Action.  The Parties acknowledge that there are no

representations, understandings, or obligations relating to this action other than those expressly contained in this 2013 Consent Decree and that neither Party is relying upon any representations, understandings, or agreements except for those set forth expressly herein.   The Parties agree and acknowledge that only those terms and obligations expressly set forth in this 2013 Consent Decree shall be enforceable in this action.

57.   Each party represents and warrants that it is in good standing and has the legal authority to enter into this 2013 Consent Decree and to bind itself thereto. Each party represents and warrants that it is acting on its own behalf and not on behalf of other parties in entering into this 2013 Consent Decree.   Each Party represents and warrants that the Party representative signing below on behalf of the Party has the authority to bind that Party.   Each Party represents and warrants that it is the sole and exclusive owner of the rights created by or arising under this 2013 Consent Decree and that neither has assigned its respective rights to enforce this 2013 Consent Decree or any other prior order or judgment entered by this Court (including, without limitation, the Prior Orders) to any other person or entity.

58.   Whenever notice is required to be given or a document is required to be sent by one Party to another under the terms of this 2013 Consent Decree, it shall be directed to all the individuals at the addresses specified below, unless prior

notice of a change has been given to the other Party. A notice shall be deemed

sufficient under this 2013 Consent Decree if it is provided in writing through the

U.S. mail, hand-delivered, or provided electronically by e-mail or facsimile. In the

event that a notice or document is provided by U.S. mail, it shall be considered

effective upon receipt. Otherwise, all other notices or documents are considered

effective upon sending.

<u>As to CARE</u>:

Charlie Tebbutt                          Gary Christensen
941 Lawrence St                          12486 Road E, SW
Eugene, OR 97401                         Royal City, WA 99357
541-344-3505 (P)                         hfarms@smwireless.net
541-344-3516 (F)
charlie.tebbuttlaw@gmail.com

<u>As to Faria</u>:

Jeremy Fielding
Lynn Tillotson Pinker & Cox, LLP
2100 Ross Ave, Suite 2700
214-981-3803 (P)
214-981-3839 (F)
jfielding@lynnllp.com

Lori Terry
Foster Pepper PLLC
1111 3rd Avenue  Seattle, WA 98101
206-447-8902
509-777-1616
TerrL@foster.com

1  Jerry Allred
   8002 Adams Road South
2  Royal City, WA 99357
3  509-750-1287
   jallred@smwireless.net
4

5  WE HEREBY CONSENT to the entry of the 2013 Consent Decree:
6
   Dated and entered this 3rd day of April 2013.
7

8

9                                        *s/Lonny R. Suko*
10                              _____
11                              LONNY R. SUKO
12                              United States District Judge
13
   Plaintiff COMMUNITY ASSOCIATION FOR RESTORATION OF THE
14
15 ENVIRONMENT, INC.

16 Signature Helen Reddout

17 Name: Helen Reddout
18
19 Title: President

20

21
   Defendant NELSON FARIA DAIRY, LLC
22
23 Signature: Jerry Allred

24 Name: Jerry Allred

25 Title: Partner
26


   2013 Consent Decree                                32

# ATTACHMENT A:

# Centrifuge Specifications

**Type:** Centrisys Centrifuge System, Model No. CS26-4.

**Vendor**:   Dairy Specialists
3309 Empire Street
Evans, CO 80620
Ph (970)33-1870

**Centrifuge Installation and Operation:** The centrifuge will be installed within the Dairy's existing system to extract solids from wastewater generated by Dairy activities. Once treated, this wastewater will either be recirculated as flush water for the freestall barns or pumped into the treatment lagoon. Faria has previously provided (and CARE acknowledges receiving) information on February 15, 2013 from the vendor documenting the vendor's conclusions regarding the general effectiveness of the centrifuge system. Faria makes no representations or warranties regarding the accuracy of this information provided by the vendor.

**Extracted Solids Disposal:** Separated material will be either used as bedding in the freestall barns or removed by third party compost companies. Separated material awaiting removal by third party compose companies will be stored on an outdoor impervious surface. Faria will use its best efforts to ensure this separated material awaiting removal is regularly removed so as to prevent the stored material from exceeding the impervious surface area.

## ATTACHMENT B

### OFF-SITE FARMER CERTIFICATION

Name: _____

Field: _____

_____

I hereby certify as follows with respect to the delivery by Nelson Faria Dairy of greenwater from the Dairy's irrigation pipeline to my field identified above:

l.      I have inspected the field with respect to: (a) the general soil and field conditions, including the presence of crops and any evidence of erosion or over-saturation; and (b) the existence and condition of water management runoff controls, including berms and tailwater recover ponds, where appropriate;

2.      For rill-irrigated fields, that tailwater recovery ponds, berms or filter strips are present where necessary to protect surface water from discharges of greenwater;

3.      There are no conditions in the field that pose a significant threat of discharge of greenwater to surface waters;

4.      The field has been tested at least twice annually for Nitrate/Nitrite and

5.      I will make best efforts to apply greenwater at agronomic rates;

6.      Greenwater shall not be applied on frozen ground; and

7.      Greenwater shall not be applied in wet conditions, if there would be a significant risk of over saturation.

DATE: _____

SIGNATURE: _____

4820-5846-2739, v. 1